## COMMONWEALTH vs. RANDY ARIAS.

No. 11-P-2170.

Essex. March 21, 2013. - October 30, 2013.

Present: KATZMANN, MEADE, & SULLIVAN, JJ.

*Homicide. Assault by Means of a Dangerous Weapon. Practice, Criminal,*
*Instructions to jury, Objections to jury instructions. Defense of Others.*

At a murder trial, the defendant's failure to object to the judge's defense of
another instruction, which was not the requested instruction the judge had
earlier agreed to give, did not preserve for appellate review the defendant's
claim of error in the adequacy of the instruction; further, the defense of
another instruction given by the judge did not create a substantial risk of a
miscarriage of justice, where, considered as a whole against the backdrop
of the trial, the instruction would have been interpreted by a reasonable
juror to have adequately conveyed the nature of the defense and its
components, and where, even if the instruction were infirm, the nature of
the defense was that the defendant had not shot anyone and defense of
another was not a live issue that was contested at trial. [462-469] SULLIVAN,
J., dissenting.

INDICTMENTS found and returned in the Superior Court Depart-
ment on December 17, 2008.

The cases were tried before *Richard E. Welch, III*, J.

*Theodore F. Riordan* for the defendant.

*Kenneth E. Steinfield*, Assistant District Attorney, for the
Commonwealth.

MEADE, J. After a jury trial, the defendant was convicted of
murder in the second degree in the shooting death of Julio
Zuniga (Zuniga), in violation of G. L. c. 265, § 1, and assault
and battery by means of a dangerous weapon causing serious
bodily injury to Roberto Francisco Sanchez Rios (Sanchez Rios),
in violation of G. L. c. 265, § 15A(c).[1] The principal issue at
trial was the identity of the shooter. On appeal, the defendant

---

[1]The jury acquitted the defendant of armed assault with intent to murder.

claims the judge failed to properly instruct the jury on defense of another. We conclude the defendant's claim was not preserved for appeal. The judge's defense of another instruction, when considered as a whole against the backdrop of the trial, would have been interpreted by a reasonable juror to have adequately conveyed the nature of the defense and its components. Even if the instruction were infirm, given the nature of the defense was that the defendant did not shoot anyone and defense of another was not a live issue that was contested at trial, there was no substantial risk of a miscarriage of justice. We affirm.

1. *Background.* a. *The club.* At approximately 11:00 P.M. on October 11, 2008, Zuniga went to a nightclub in Lawrence to watch a televised soccer game. He was accompanied by his brothers, Francisco "Paco" Zuniga (Paco) and Altero Zuniga (Altero),[2] his cousin Sanchez Rios, and two friends, Oscar Bolanos and Jesus Estrella. Zuniga's group arrived at the club courtesy of Paco's Ford Explorer sport utility vehicle (SUV).

At 12:15 A.M. on October 12, the defendant, Frederich Frias, and Edward Rosario entered the same club. The defendant's group arrived in a light brown Acura sedan driven by, and registered to, the defendant. The defendant's group spent some time in the downstairs area of the club, then proceeded upstairs; Zuniga's group was upstairs watching soccer.

When the club closed at 1:00 A.M., Zuniga's group walked to a lot across the street from the club where Paco had parked his SUV. When they got to the SUV, Zuniga told the others he wanted something to eat, and they walked back across the street to a food cart. Altero and Bolanos went back into the club. After buying some sandwiches, Zuniga and the remainder of his group walked back across the street to where the SUV was parked. When the defendant's group left the club, they also crossed the street to an alley where the defendant had parked his Acura. The area was not well lit.

b. *The shootings.* The Commonwealth's three key witnesses provided varying accounts of the shootings. Sanchez Rios testified that after they bought their sandwiches and were returning

---

[2]We refer to Zuniga's brothers, and certain other witnesses, by their first names or nicknames to avoid confusion.

to the SUV, he heard Frias[3] exchange words with Zuniga. Zuniga did not understand what had been said and asked, "Well, what is it that you want?" Frias then started a fistfight with Zuniga; the defendant approached Zuniga from behind and hit him in the back. Sanchez Rios ran over to assist Zuniga and pulled the defendant away and began to beat him. Sanchez Rios continued to beat the defendant, who was then on the ground. At some point, Rosario said he did not want to have any problems, and Sanchez Rios suggested that the defendant's group leave.

At this point, either Rosario or the defendant pushed Sanchez Rios onto his side. As Sanchez Rios sat up, he heard two or three shots, looked at Zuniga, and heard more shots. During the second volley of shots, Sanchez Rios could see that the defendant was the shooter, as his face was illuminated by the flashes of the discharging gun.[4] The shooter wore a dark-colored or black long-sleeved shirt and was standing next to the open door of the Acura. When the shooting ended, Sanchez Rios saw the Acura drive away, and he fell to the ground because he had been shot.[5]

Paco testified that when he went to get the SUV in the lot across the street, he could see that it was blocked in by other cars. Paco was told that a fight had erupted, and he saw Zuniga fighting with three or four people near the defendant's Acura. Zuniga was fighting with the defendant, Sanchez Rios, and Frias, and Rosario was hitting Estrella. Paco hit Rosario in defense of Estrella, and Rosario withdrew and walked toward the Acura. When Paco turned to help Zuniga and Sanchez Rios, Rosario resumed his beating of Estrella. Paco then chased Rosario in the direction of the Acura, and Rosario said he was done fighting. Paco heard some shots and turned around and saw a "person" with a gun. Paco heard Zuniga say something like

---

[3]Sanchez Rios testified that the comment came from the thin man in the defendant's group. Frias was described as "slim" and the defendant and Rosario were described as "husky" and "stocky."

[4]Sanchez Rios identified the defendant in a photographic array and at trial. Sanchez Rios remarked that he had seen the defendant's face and would never forget the face of the man who shot him.

[5]The presence of gunshot residue on Sanchez Rios indicated that he was shot from a range of two feet or closer.

"[shoot] me if you have balls," and then the gunman fired more shots. Zuniga grabbed his chest in pain and Paco ran around the Acura towards the shooter; Rosario ran away. Paco heard more shots and saw the shooter get into the Acura and drive away at a high rate of speed. He did not see anyone else in the Acura.[6]

Frias testified that he was on his cellular telephone yelling at his girlfriend when the defendant's group was near the Acura. Frias believed that Zuniga's group mistakenly thought Frias was addressing them, which resulted in Zuniga's group confronting the defendant's group. A fight began. Frias claimed he was stomped and kicked while he was on the ground, and the defendant and Rosario abandoned him there. As Frias saw Rosario running away, he heard two shots, and then a third. Frias looked at the defendant standing next to the Acura, and Frias saw the flash of the gun as more shots were fired. Frias then saw the defendant, alone, drive away quickly; Frias ran down an alley and met up with Rosario a few blocks away.

c. *The defendant threatens Frias.* Later that morning at 9:30 A.M., the defendant spoke to Frias on the telephone and admitted to Frias "that [the defendant] had killed somebody and he did it for" Frias. Frias denied that the defendant had done it for Frias because they were all merely fighting and the defendant unnecessarily escalated the matter by using a gun. The defendant warned Frias that if he said "anything about this," the defendant would "send Cesar after" him. Frias knew Cesar, and Frias told the police that he was afraid of the defendant.

2. *The defense.* The main premise of the defense was misidentification.[7] In support, Sugeily Perez (Sugeily) testified that she went to the club that night with her husband, her cousin Vanessa Perez (Vanessa), and her brother-in-law in Vanessa's car. They left the club around 12:50 A.M., and walked toward the food cart while Sugeily took Vanessa's car keys to move her car. While crossing the street, Sugeily saw two men standing near the rear bumper of the defendant's car, which was parked

---

[6]The area of Zuniga's wounds tested negative for gunshot residue, which indicated that he was not shot at close range.

[7]The defendant also contested the adequacy of the police investigation. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980).

in the alley.[8] Frias, who stood on the driver's side, wore a shirt with a "skull design" (also described as a "gas mask") on the front, and the other man, on the passenger side, wore a black sweater.

Sugeily believed the men were looking for a fight, but they told her she would not get shot because she was female. Sugeily quickly got into Vanessa's car and moved it to the street in front of the food cart. Sugeily saw Zuniga's group walking from the cart and saw the man in the black sweater yell at them, and a fight began with the defendant's group. She saw Frias on the ground getting kicked by Zuniga's group, and the man in the black sweater quickly entered and exited the car, followed by smoke and the sound of "firecrackers" coming from the passenger's side. Frias and the man in black got into the car and drove away. Sugeily told the police that Zuniga had not been in the fight at all and was minding his own business when he got shot.

The defense contended that the defendant wore a red sweater or shirt that night and the shooter wore a black sweater or black jacket. This implied that Rosario, not the defendant, was the other man Sugeily saw with Frias behind the car.

3. *The instructions.* After explaining the definition of proof beyond a reasonable doubt and in conjunction with the elements of murder in the first degree, the judge stated that to be murder, a killing must be unlawful. Further explaining, he stated:

> "An unlawful killing . . . is a killing done without excuse. Now not all killings are unlawful. A killing maybe excused, for example, in the case of self-defense or defense of another. And the evidence in this case does raise the issue of whether this killing was . . . excuse[d] as a result of self-defense or the defense of another."[9]

The judge instructed the jury that it was the Commonwealth's

---

[8]Although various witnesses described the car as being different colors and models, based on the location the jury could reasonably have concluded that the car was the defendant's Acura.

[9]Later, relative to murder in the second degree, the judge again instructed that the Commonwealth had to prove "an unlawful killing . . . that is killing that was not done in self-defense, or a killing that was not done in defense of another."

burden to "prove beyond a reasonable doubt that the killing was not the result of the defendant's acts of self-defense or defense of another."[10]

After instructing on murder and before discussing manslaughter, the judge reiterated that the jury must find an unlawful killing in order to convict the defendant of either degree of murder, and he returned to the concepts of self-defense and defense of another. He stated:

> "If someone is acting in a legitimate exercise of self-defense, then they are not guilty of murder. They're not guilty of second degree murder. They're not guilty of manslaughter. They're not guilty of anything, because you are entitled, in the appropriate circumstances, to use deadly force against someone, or a legitimate use of self-defense or defense of another."

The judge also reminded the jury that it was the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense or defense of another.

Following this, the judge instructed on self-defense, the use of deadly force, reasonable fear and apprehension of death or serious bodily injury, and again, the Commonwealth's burden of proof as it related to these terms. In conjunction with self-defense, the judge again instructed the jury on defense of another. He stated that a killing may also be excused if it was done not in self-defense but in defense of another. Elaborating, the judge instructed that defense of another

> "mirrors that of self-defense, that is the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in defense of a third person. If the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in defense of a third person, then you must find the defendant not guilty. In other words, if you have a reasonable doubt about whether the defendant

---

[10]To assist in his jury charge, the judge used a blackboard that contained instructions on identification and the elements of murder, including that the Commonwealth must prove an unlawful killing, which in turn required the Commonwealth to prove that the defendant did not act in self-defense or in defense of another. The defendant did not lodge an objection to the use of the blackboard or to the contents of the instructions written upon it.

acted in defense of a third person, then your verdict must be not guilty. But again, you can only use deadly force in defense of a third person as I have already instructed you on self-defense."

The judge then turned to manslaughter and instructed as follows:

"Remember, if the Commonwealth fails to prove to you that the defendant did not act in self-defense or fails to prove to you that the defendant did not act in defense of another, as I've put up there on the board the appropriate use of self-defense, then the defendant is not guilty of either murder or manslaughter. But if the Commonwealth . . . fails to prove to you that the defendant did not act in self-defense but does prove to you beyond a reasonable doubt that he used excessive force in self-defense, then . . . the defendant would be guilty of the lesser included crime of manslaughter."

Noting the double negatives in the instruction, the judge repeated it, stressed that the Commonwealth always bears the burden of proof, and stated:

"The Commonwealth has to prove to you beyond a reasonable doubt that the defendant was not acting in self-defense. If the Commonwealth proves to you, that he's not acting in self-defense or defense of another, it [has] proven an unlawful killing. But if they fail to do that, if they fail to prove to you beyond a reasonable doubt the defendant was not acting in self-defense or not acting in defense of another, but do prove to you, the Commonwealth does prove beyond a reasonable doubt that the defendant used excessive force in self-defense, then the Commonwealth has proven the lesser included crime of manslaughter."

After a short break, the judge told the jury that to prove murder in either degree, the Commonwealth was required to prove malice, and that the Commonwealth had to prove the absence of "certain mitigating circumstances, . . . which lessen the defendant's culpability for an act." A killing "may be the crime of manslaughter" if committed "under mitigating cir-

cumstances." The judge explained that "the circumstance that you must consider is heat of passion induced by sudden combat." He instructed on heat of passion, but did not mention either self-defense or defense of another in his "mitigating circumstances" instructions.

After instructing on the elements of armed assault with intent to murder and assault and battery by means of a dangerous weapon causing serious bodily injury, where Sanchez Rios was alleged to be the victim, the judge the jury instructed that the Commonwealth

> "has to prove beyond a reasonable doubt that the defendant was not acting in self-defense at the time or not acting with the appropriate use of self-defense or defense of another. The same definition I've already given on the murder charge.

> "If the Commonwealth, if you find that the Commonwealth has failed to prove that the defendant was not acting in self-defense or not acting in defense of another, or failed to prove some other mitigating circumstances, such as heat of passion induced by sudden combat, then you would go on to consider whether the Commonwealth has proven the lesser included crime of armed assault with intent to kill.

> "Now if there [was] evidence of mitigation, and mitigation would be, for example, acts done in self-defense or defense or another, or acts done when in sudden combat, then you would consider the issue of the lesser included crime of armed assault with intent to kill, not intent to murder.

> "Now . . . if . . . you determine the Commonwealth has proven beyond a reasonable doubt that the defendant assaulted Mr. Sanchez Rios while armed with a dangerous weapon, but that there were certain mitigating circumstances, such as he was acting with heat of passion, with — based on sudden combat, he would be not guilty of armed assault with intent to murder. . . .[11]

---

[11]The judge repeated this instruction twice.

"Likewise, if the Commonwealth proves to you the elements of armed assault with intent to murder but fails to prove to you beyond a reasonable doubt that the defendant was acting in self-defense or fails to prove to you beyond a reasonable doubt that he was acting in defense of another,[12] but does prove to you beyond a reasonable doubt that he was using excessive . . . force in self-defense or defense of another, then the Commonwealth has proven the lesser included crime of armed assault with intent to kill."

Relative to the charge of assault and battery by means of a dangerous weapon causing serious bodily injury, the judge instructed the jury that:

"the Commonwealth would have to prove to you beyond a reasonable doubt that the defendant was not acting in the appropriate use of self-defense or defense of another. If the Commonwealth fails to prove that, then the defendant is not guilty of assault and battery by means of a dangerous weapon causing serious bodily injury, unless the Commonwealth proves to you beyond a reasonable doubt that the defendant acted with excessive use of force in self-defense or defense of another."

After explaining the elements of assault and battery by means of a dangerous weapon causing serious bodily injury that the Commonwealth would have to prove beyond a reasonable doubt, the judge added:

"And the Commonwealth also has to prove that the battery or the touching was not justified or excused in some way. Again, that's why I mention that they have to prove beyond a reasonable doubt that he was not acting in the legitimate use or the appropriate use of self-defense or defense of another."

4. *Discussion.* a. *The standard of review.* The defendant filed

---

[12]The judge did not include the word "not" before both uses of the word "acting" in this clause. Similarly, while explaining the verdict slip and manslaughter, the judge spoke in terms of the Commonwealth's burden to prove self-defense or defense of another, as opposed to failing to prove the defendant did not act in self-defense or defense of another.

several written requests for jury instructions, including an instruction on defense of another with language explaining that the use of excessive force in defense of another reduced the crime of murder to manslaughter. At the charge conference, the judge agreed to give a defense of another instruction, but he declined to give an involuntary manslaughter instruction or a *Bowden* instruction.[13] After the judge instructed the jury, he asked counsel for any objections. The defendant noted that he had filed written requested instructions and clarified he was not waiving those, but wished to point out a few things. In response, the judge said, "Your rights are saved." The defendant then made six specific objections to instructions he had requested. Each time the judge overruled an objection, he noted that the defendant's rights were saved. None of these objections related to the defense of another instruction or the excessive use of force in defense of another. The judge gave further instructions that were pertinent to the portions of the six objections he did not overrule.

Despite the lack of any objection to the defense of another instruction, the defendant asserts that the claims now made for the first time on appeal were preserved when the judge "saved" the defendant's rights at the charge conference. We disagree. In general, claims may be preserved for appellate review when a party's rights are saved. See *Commonwealth* v. *Dunton*, 397 Mass. 101, 102 n.2 (1986) (where defendant requested particular instruction before charge but did not object to judge's refusal to give instruction after charge, issue nonetheless preserved for appellate review because judge told defense counsel that defendant's rights "were fully protected"). Also, when a judge refuses to give a requested instruction, a defendant's rights are saved without the necessity of a further objection. See *Commonwealth* v. *Rosario*, 460 Mass. 181, 187 (2011). However, when a judge agrees to give a requested instruction — as the judge did here with the request for a defense of another instruction — any claim of error in the adequacy of the instruction must be preserved for appellate review by a postcharge objection. See *Commonwealth* v. *Thomas*, 439 Mass. 362, 371 (2003). See also *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979) ("It is

[13]See note 7, *supra.*

a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any"). Here, the only relevant appellate rights the judge saved related to his refusal to give either a *Bowden* or an involuntary manslaughter instruction. Because the defendant failed to object to the defense of another instruction, the claims he now raises on appeal are not preserved. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). We therefore review to determine whether an error occurred and, if so, whether that error created a substantial risk of a miscarriage of justice.

To determine whether the judge's instruction created a substantial risk of a miscarriage of justice, and keeping in mind that "[e]rrors of this magnitude are extraordinary events and relief is seldom granted," *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002), we ask four questions. They are: "(1) Was there error? (2) Was the defendant prejudiced by the error? (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?" *Id.* at 298 (citations omitted). "Only if the answer to all four questions is 'yes,' may we grant relief." *Ibid.* See *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003).

In *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976), the Supreme Judicial Court stated the elements of defense of another as follows: "An actor is justified in using force against another to protect a third person when (a) a reasonable person in the actor's position would believe his intervention to be necessary for the protection of the third person, and (b) in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect himself." Here, the defendant claims the judge failed to communicate to the jury the substance of defense of another and only paraphrased the second paragraph of the Model Jury Instructions on Homicide 57 (1999) by stating that "the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in defense of a third person." The defendant

argues this instruction was vague, it did not tell the jurors that the defendant had the right to use deadly force to defend Frias if Frias had the same right, and the judge did not explain that the defendant's conduct had to be considered through the lens of a reasonable person.[14]

Our review of claimed jury instruction errors requires us to "evaluate the instructions as whole, looking for the interpretation a reasonable juror would place on the judge's words." *Commonwealth* v. *Trapp*, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996). "We do not consider bits and pieces of the instructions in isolation." *Commonwealth* v. *Young*, 461 Mass. 198, 207 (2012).[15]

The defendant first claims the judge's instruction was not specific enough regarding the definition of defense of another and that the judge failed to instruct that the defendant had the right to use deadly force if Frias had the same right under the circumstances. While the judge did not define defense of another or use the *Martin* factors verbatim, see *Commonwealth* v. *Martin*, 369 Mass. at 649, it would have been improper for him to have given the "alter ego" instruction the defendant has now raised on appeal. In the second clause of the *Martin* formulation, "the circumstances must be viewed from the perspective of the intervening defendant, not of the third party." *Commonwealth* v. *Young*, *supra* at 209. See *Commonwealth* v. *Martin*, *supra*. "Thus, whether [Frias] was, in retrospect, actually entitled to use self-defense is not a consideration." *Commonwealth* v. *Young*, *supra*. Relative to whether the jury were instructed to consider the defendant's conduct under a reasonable person standard, we do not find fault in the judge's instruction. Although he did not use the *Martin* formulation verbatim, the judge did refer to actions,

---

[14]The defendant also claims that the judge failed to instruct on the mistaken use of deadly force, but he only requested this instruction in conjunction with self-defense. The judge was not required to further expound on the concept without a request to do so.

[15]The defendant claims that we should review for "possible misunderstandings by reasonable jurors" to determine if there was error. However, that standard only applies to instructional errors that lowered the Commonwealth's burden of proof as to the elements of the offense. See *Commonwealth* v. *Smith*, 427 Mass. 245, 249 n.6 (1998); *Commonwealth* v. *Medina*, 430 Mass. 800, 804 n.4 (2000).

fear, and apprehension in terms of reasonableness.[16] Taken as a whole, the charge explained that the defendant was entitled to use deadly force in defense of another if he was acting based on a reasonable apprehension and belief that Frias faced either great bodily harm or death and it was reasonable for the defendant to so act.

The defendant next claims the judge failed to charge the jury that the use of excessive force in the defense of another may serve as a mitigating factor to reduce murder to manslaughter. When the charge is evaluated as a whole, we disagree. The judge instructed the jury that both degrees of murder required the Commonwealth to prove an unlawful killing, and that a killing was deemed "excused" or "not unlawful" if it occurred in the defense of another. He repeated this in his instructions on self-defense and defense of another, where he stated that the defendant was not guilty of any crime if he acted in the "legitimate use" of defense of another. He further noted that defense of another "mirrors" self-defense. This was a correct statement of the law. See *Commonwealth* v. *Martin, supra* at 650 ("[T]he trend . . . has been to interweave closely the justification of defense of a third person with self-defense"); *Commonwealth* v. *Adams*, 458 Mass. 766, 774 (2011) ("Defense of another tracks, and is interwoven with, the elements of self-defense"); Model Jury Instructions on Homicide 58 (1999) ("The defense of another instruction should mirror the self defense instruction").

On the subject of excessive force, the judge twice stated that the use of such force in self-defense reduced murder to manslaughter. Although he did not specify the same for defense of another at this point in the charge, he did speak of self-defense in tandem with, or the equivalent of, defense of another. A similar, nonfatal slip occurred in *Commonwealth* v. *Clemente*, 452 Mass. 295, 322 (2008), where the judge mistakenly told the jury that a defendant loses his justification completely when he

---

[16]For example, the judge told the jury that a person is "entitled, in the appropriate circumstances, to use deadly force against someone" in defense of another. He further told the jury of the circumstances in which the use of deadly force in self-defense was permissible, i.e., when a person has a "*reasonable* apprehension of great bodily harm or death and a *reasonable* belief that no other means would suffice to prevent such harm" (emphasis supplied).

uses excessive force in defense of another. Because of this, the defendant claimed the judge failed to inform the jury that excessive force in defense of another required a manslaughter verdict and precluded a murder conviction. *Ibid.* However, the Supreme Judicial Court concluded that because the judge had properly explained the excessive force concept within his instruction on self-defense, which in context applied equally to defense of another, there was little chance the jury failed to realize the import of excessive force. *Id.* at 323. The same is true here where the judge explicitly told the jury that the two defenses mirrored one another and functioned as equivalents.

In addition, the import of excessive force was made clear when the judge discussed mitigating circumstances that reduced murder to manslaughter. Although he initially spoke in terms of heat of passion and sudden combat, the judge treated self-defense and defense of another equally when he instructed on armed assault with intent to murder Sanchez Rios and assault and battery by means of a dangerous weapon causing serious bodily injury to Sanchez Rios. The judge specifically instructed that if the Commonwealth "failed to prove that the defendant was not acting in self-defense or not acting in defense of another, or failed to prove some other mitigating circumstance, such as heat of passion induced by sudden combat," then the jury were to consider whether the Commonwealth had proved the lesser included offense of armed assault with intent to kill. He further told the jury that self-defense and defense of another are examples of mitigating circumstances. While these instructions were given in the context of armed assault with intent to murder, the judge coupled self-defense and defense of another as mitigating circumstances. When this is combined with the previous instruction on excessive force and manslaughter, a reasonable juror would properly understand that the use of excessive force in defense of another reduced murder to manslaughter.[17]

When the instructions are considered as a whole, and not

---

[17]After warning about the danger of speculation, the dissent maintains that when the jury were properly instructed on excessive force in defense of another in relation to the charge of assault with intent to murder, they acquitted the defendant of that charge. However, the dissent's conjecture glosses over the facts that this was a different charge and a different victim.

parsed out in isolation, we conclude that the defendant's claims are without merit. However, even if we were to conclude the definition of defense of another was not specific enough, or failed to properly track the *Martin* formulation, 369 Mass. at 649, or failed to explain the mistaken use of deadly force, we could not conclude that the defendant suffered any real prejudice or that the error materially influenced the verdict.

Assuming the defendant was entitled to the defense of another instruction, the defenses advanced at trial were misidentification, that Rosario was the shooter, and that there was shoddy police work. These were the theories provided by the defendant in his opening statement[18] and closing argument.[19] Defense of another was not a live issue. See *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986) ("[N]o harm accrues to a defendant if an error [in instruction] does not relate to an issue actively contested at trial"); *Commonwealth* v. *Mitchell*, 67 Mass. App. Ct. 556, 565-566 (2006) (no prejudice by judge's erroneous instruction that did not relate to live issue at trial). At the charge conference, even defense counsel acknowledged that the "essence of the case was misidentification." Indeed, not only was defense of another not a live issue, it would have been inconsistent with the primary defense that that defendant was not the shooter.

All these factors belie any claim by the dissent that intent and defense of another were either contested or live issues. Even though we must evaluate the claimed instructional error for the effect it would have on a reasonable juror, see *Commonwealth* v. *Trapp*, 423 Mass. at 361, that task is not carried out in a vacuum but against the backdrop of the trial that actually occurred. Here, a reasonable juror would have no knowledge of the contest the dissent creates, because it did not take place.[20]

---

[18]In his opening statement, the defendant maintained that this case was "simple" because he shot neither the victim nor Sanchez Rios. He instead claimed that Rosario, wearing a black shirt, was the shooter and that the Commonwealth would fail to prove the defendant shot anyone.

[19]In his closing argument, the defendant marshalled the evidence to argue that the Commonwealth had failed to prove that the defendant shot anyone, as he had told the jury in his opening statement. He further argued that Rosario had a motive to shoot the victim because he was protecting Frias, who was Rosario's first cousin.

[20]The dissent claims the Commonwealth introduced evidence that the defendant acted in defense of Frias which, if believed, was probative of intent and

Rather, when considering the claimed error in the context of the entire trial, it would not be reasonable to conclude that the error, if any, materially influenced the verdict. Because we do not answer all four of the *Randolph* inquires in the affirmative, there is no substantial risk that justice miscarried. See *Commonwealth* v. *Randolph*, 438 Mass. at 298.

*Judgments affirmed.*

SULLIVAN, J. (dissenting). Although the defense argued to the jury was identification, the defendant never conceded his alternative theories of defense of another and use of excessive force in defense of another. Because he requested instructions on these defenses, and because intent is always for the jury in murder cases, the issue of intent remained a "live issue" at his trial for murder in the first degree. See *Commonwealth* v. *Repoza*, 400 Mass. 516, 522 n.7 (1987); G. L. c. 265, § 1. The instructions on defense of another and the use of excessive force in defense of another did not inform the jury that the use of excessive force in defense of another permitted a conviction of manslaughter rather than murder. Whether viewed as preserved or unpreserved error, the omissions in the instructions were systemic in a case where the evidence put intent at issue and the jury were still required, once they rejected the identification defense, to decide the degree of culpability. Accordingly there is, at the very minimum, "a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002), quot-

defense of another. See *post* at 480. However, a reasonable juror would not have held such a belief. The evidence in question came from Frias himself when he disputed the defendant's contention that the defendant killed the victim for Frias, in what had merely been a weaponless street fight. Frias added that the defendant threatened him if he "said anything about" their conversation. Conveying such a threat would not have increased, in the mind of a reasonable juror, the credibility of the defendant's claim that he acted in defense of Frias. Indeed, it suggests the idea was completely manufactured. Finally, the unreasonable nature of such a belief would have also been reinforced by the defendant's closing argument where he argued that "no one should have been shot. No one. No one should have suffered. It was a fist fight. No one should have died, absolutely."

ing from *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). I therefore respectfully dissent.

1. *Background.* The Commonwealth's theory at trial was that the defendant shot Julio Zuniga in cold blood and threatened Frederich Frias in a subsequent telephone call to procure his cooperation. The defense theory, as argued to the jury, was that Frias's cousin, Edward Rosario, was the shooter; that Rosario shot Zuniga to protect Frias; and that Frias was lying about the shooting and the telephone call to protect his cousin, Rosario. The jury rejected both the prosecution and the defense theories, finding that the defendant was the shooter, but that the shooting was not premeditated. On appeal, the issue is no longer whether the defendant was the shooter, a finding for which there was a clear basis in the evidence, as the majority's summary of the evidence amply demonstrates. Rather, the issue is whether intent remained a live issue, and if so, whether incorrect instructions resulted in error requiring that the judgments be vacated.

Viewing the evidence in the light most favorable to the defendant, the evidence plainly raised the issue of intent and was sufficient to support the instructions on defense of another and use of excessive force in defense of another.[1] See generally *Commonwealth* v. *Johnson*, 412 Mass. 368, 372-373 (1992). The shooting took place after a fight broke out in which Frias was on the ground being beaten and kicked in the head. In his own words, after he fell to the ground, "everyone" began to hit or "stomp" him in the face, head, ribs, and body some twenty to thirty times.[2] Sugeilly Perez, a bystander, also testified that she

---

[1] "Although the defendant at trial denied having assaulted the victim, for purposes of this argument on appeal he does not contest the jury's finding that he was the assailant. We therefore 'summarize[] the evidence in a light most favorable to the defendant, consistent with his having killed the victim.' " *Commonwealth* v. *Medina*, 430 Mass. 800, 809 & n.11 (2000), quoting from *Commonwealth* v. *Pitts*, 403 Mass. 665, 667 n.2 (1989).

[2] The evidence was in conflict as to how the fight started and who started it. Frias said that he was with both the defendant and Rosario, talking on his cellular telephone to his girlfriend, who was at another club, and yelled at her, "You stupid fucking bitch." At this point, according to Frias, the other men, apparently thinking that the yelling was directed to them, confronted Frias. A fight broke out. Frias claimed that a man swung at him and missed, and that he (Frias) then hit the other man. According to the other victim, Roberto Francisco Sanchez Rios, Frias threw the first punch.

could see the fight, that a group of four men fought with Frias and another man, and that Frias was being kicked on the ground by "all of them." Frias heard the gunshots while he was on the ground, that is, while he was under attack. The Commonwealth agreed at trial that the instructions were warranted, and the judge so found. Accordingly, this appeal must be evaluated in the following context: that the defendant was entitled to the instructions, that the instructions were requested, and that the evidence of intent, use of excessive force, and defense of another was contested.

2. *Instructions.* During the charge conference, the defendant requested that the judge give the Model Jury Instructions on Homicide (1999) regarding self-defense, defense of another, and use of excessive force in self-defense, which the defendant had edited to emphasize the defense of another. The judge agreed to give an instruction, but took the requests, which were in writing, under advisement.

The next day, when charging the jury, the judge did not give the instructions requested but did instruct on self-defense, defense of another, and use of excessive force after he instructed on murder in the first degree and before he instructed on manslaughter.[3] In an effort that presaged the 2013 revisions to the Model Jury Instructions on Homicide, the judge also attempted to modify the model instructions by making parallel references to both self-defense and defense of another when he described the jury's obligation to acquit if the Commonwealth failed to

---

[3]"Although it is generally preferable to instruct on the elements of a defense to a crime after describing the elements of the crime, a specific order in jury instructions is not required." *Commonwealth* v. *Santiago,* 425 Mass. 491, 506 (1997). The Model Jury Instructions on Homicide (1999), as then in effect, suggested that the model instruction on voluntary manslaughter be given immediately following the instruction on murder in the first and second degree. The judge, instead, instructed on self-defense and defense of another immediately following the instructions on murder in the first and second degree, and then turned to the manslaughter instruction. When instructing on manslaughter, he identified heat of passion induced by sudden combat as a mitigating factor, but did not state that excessive use of force in self-defense or defense of another were mitigating factors, as set forth in the model instruction on manslaughter. Thus, any error in the defense of another instruction was not ameliorated by the model instruction on manslaughter because the defense of another instruction was not mentioned in conjunction with the manslaughter instruction.

prove that the defendant did not act in self-defense or defense of another.

However, when instructing the jury on the circumstances in which the use of excessive force would result in a conviction of manslaughter rather than murder, the judge referred only to the use of excessive force in self-defense, omitting any reference to defense of another. At no time during the instructions were the jury told that the use of excessive force in defense of another would reduce the crime from murder to manslaughter.[4] In addition, the judge gave an instruction defining self-defense, but did not give the instruction defining defense of another that the defendant had requested. Instead, the judge told the jury that deadly force could be used in defense of another, and that defense of another "mirrored" self-defense.

In his final instruction to the jury, as he reviewed the verdict slip for manslaughter, the judge again instructed on heat of passion induced by sudden combat as a mitigating factor reducing a verdict to manslaughter, but did not address the use of excessive force in self-defense or defense of another as basis for reducing a verdict from murder in the second degree to manslaughter. See note 4, *supra.* Moreover, he instructed the jury that if the Commonwealth failed to prove self-defense or defense of another, the defendant was guilty of manslaughter.[5]

---

[4]The judge first told the jury that "if the Commonwealth fails to prove to you . . . that the defendant did not act in self-defense but does prove to you beyond a reasonable doubt that he used excessive force in self-defense, then . . . the defendant would be guilty of the lesser included offense of manslaughter." He then repeated the instruction, stating, "But if they fail to do that, if they fail to prove to you beyond a reasonable doubt the defendant was not acting in self-defense or not acting in defense of another, but do prove to you, the Commonwealth does prove beyond a reasonable doubt that the defendant used excessive force in self-defense, then the Commonwealth has proved the lesser included crime of manslaughter." On a third occasion he stated, "But if the Commonwealth proves beyond a reasonable doubt that the defendant did exercise excessive use of force in self-defense, then the Commonwealth has proven that it was an unlawful killing, but has not proven malice, so it would be the lesser included offense of manslaughter." With respect to mitigating circumstances that would reduce murder in the second degree to manslaughter, the judge next instructed the jury that the Commonwealth must also prove the absence of other mitigating circumstances, to wit, heat of passion induced by sudden combat. He did not, however, reference the use of excessive force as a mitigating circumstance again in the murder instructions.

[5]"Guilty of manslaughter, that is, if the Commonwealth fails to prove to

The final instruction was therefore infirm in two respects. First, the judge should have inserted the words "lack of" before the reference to self-defense and defense of another, and second, self-defense and defense of another are complete defenses, not mitigating factors. See *Commonwealth* v. *Johnson*, 412 Mass. at 372-373; *Commonwealth* v. *Santos*, 454 Mass. 770, 774 (2009). Thus, in addition to being deficient with respect to the use of excessive force, the judge's final words on manslaughter and the use of excessive force in defense of another were erroneous and contradicted the earlier instruction on the same subject.[6] Compare *Commonwealth* v. *Young*, 461 Mass. 198, 210 (2012).

3. *Live issue.* In a prosecution for murder, "[t]he degree of murder shall be found by the jury." G. L. c. 265, § 1. Despite the fact that the primary issue argued to the jury was identification, "under our statute, there is always an element of intent for the jury to determine in murder cases in which the defendant does not concede that a conviction of murder in the first or second degree would be warranted if the proper person were prosecuted. See, e.g., *Commonwealth* v. *Lee*, 383 Mass. 507, 512 (1981)." *Commonwealth* v. *Repoza*, 400 Mass. at 522 n.7. In *Commonwealth* v. *Repoza*, the Supreme Judicial Court reversed a conviction for second degree murder in which identification, "was the pivotal element at trial," but an erroneous instruction, to which there was no objection, shifted the burden of proof on intent. *Ibid.* Where, as here, the evidence places self-defense or defense of another in play, it remains for the jury to decide whether the defendant is guilty of murder in the first degree, second degree or manslaughter, even where the main contested issue at trial is identification. Here, the defendant also did not concede intent, and requested instructions on his alterna-

you beyond a reasonable doubt self-defense or defense of another, or fails to prove a lack of heat of passion based on sudden combat, and you find manslaughter, that all twelve of you agree with that, you check that one off."

[6]There is no indication in the record that written jury instructions were provided to the jury. Although a blackboard was used by the judge, the record does not reflect what was written on it or that a chart was given to the jury. The statement of the Supreme Judicial Court accompanying the Model Jury Instructions on Homicide (2013) recommends that the judge provide jurors with a recording of the charge and a written copy of the charge where one is available, as well as the chalk titled "Requirements of Proof for Homicide" appended to the model instructions.

tive theory of defense of another. Contrast *Commonwealth* v. *Norris*, 462 Mass. 131, 142-143 (2012). Counsel's decision to argue the evidence of identification before the jury and "leave the discussion of the law to the judge" was permitted and reasonable. Cf. *Commonwealth* v. *Callahan*, 401 Mass. 627, 636 (1988); *Commonwealth* v. *Stockwell*, 426 Mass. 17, 22 (1997). By arguing identification, the defendant did not give up his right to have the issue of intent decided by the jury under a proper instruction. Intent remained a live issue. *Commonwealth* v. *Repoza, supra; Commonwealth* v. *Callahan, supra.*[7]

4. *Standard of review.* This case presents a close and difficult question of preservation, made all the more difficult by the fact that there was enormous effort by a conscientious judge and conscientious counsel (on both sides) to craft fair instructions and preserve the defendant's rights to appellate review. At the close of the instructions the defendant reiterated his request for his written instructions, and the judge interrupted to assure him that his rights were saved.[8] No further objection was made as to the issues argued on appeal.

The exchange thus pitted two well-honed principles of law directly against one another. The first is the requirement of postcharge objection. See *Commonwealth* v. *Chapman*, 433 Mass. 481, 489 (2001).[9] The second is the degree to which the defendant may rely upon a judge's assurances that his rights are

---

[7]The Supreme Judicial Court's decision in *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986), and this court's decision in *Commonwealth* v. *Mitchell*, 67 Mass. App. Ct. 556, 565-566 (2006), see *ante* at 468, do not involve murder prosecutions or requests for instructions on an alternate theory of defense. In *Mitchell*, the issue implicated by the challenged instruction was not raised in any way by the facts.

[8]At the conclusion of the instructions the defendant stated his objections, with the following response from the judge.

> DEFENSE COUNSEL: "Yes, your Honor, I'll just note for the record that I did file written instructions. And I'm not waiving any of those, but I'm just pointing out a couple of things."
>
> THE COURT: "Good point."
>
> DEFENSE COUNSEL: "With respect to —"
>
> THE COURT: "Your rights are saved."

[9]In *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979), and *Com-*

"saved." See *Commonwealth* v. *Aviles*, 461 Mass. 60, 66 (2011); *Commonwealth* v. *Jones*, 464 Mass. 16, 19 & n.4 (2012). It is not necessary to decide whether the error was preserved, however, because, in my view, even if one treats the error as unpreserved, and analyzes it under this more exacting standard, there is still a "serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Acevedo*, 446 Mass. 435, 450 (2006), quoting from *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999).

5. *Error in the instructions.* a. *Use of excessive force in defense of another.* The conviction must be reversed if there was error in the instructions on the use of the use of excessive force in defense of another that created a substantial risk of miscarriage of justice. See *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 172 (2000) (although primary issue at trial was self-defense, erroneous instruction on provocation created substantial risk of miscarriage of justice where evidence at trial raised issue of provocation). Cf. *Commonwealth* v. *Carlino*, 429 Mass. 692, 694 (1999); *Commonwealth* v. *LaPage*, 435 Mass. 480, 486 (2001) (substantial likelihood of miscarriage of justice following conviction of murder in first degree where defendant's principal defense was self-defense, but there was "sufficient evidence that obligated the judge to instruct the jury correctly on provocation"). See generally *Commonwealth* v. *Chotain*, 31 Mass. App. Ct. 336, 341 (1991).[10]

Once the identification defense was rejected, the "*degree* of criminal liability" was the primary issue for the jury. *Commonwealth* v. *Johnson*, 412 Mass. at 373. The Commonwealth bore the burden of disproving the use of excessive force in

monwealth v. *Thomas*, 439 Mass. 362, 371 (2003), see *ante* at 463-464, the judge did not tell the defendant that his rights were saved.

[10]This case is distinguishable from those in which the improper instruction pertained to an issue that was conceded at trial, *Commonwealth* v. *Neimic*, 427 Mass. 718, 721-722 (1998); uncontested, *Commonwealth* v. *Garcia*, 82 Mass. App. Ct. 239, 250 (2012); unsupported by the evidence, *Commonwealth* v. *Medina*, 430 Mass. at 809 n.11; or immaterial, because the defendant was also convicted of felony-murder, *Commonwealth* v. *Smith*, 459 Mass. 538, 548 (2011). Nor is this a case where the jury's verdict or questions made it clear that the jury had rejected the claim of self-defense or defense of another, *Commonwealth* v. *Torres*, 420 Mass. 479, 492-493 (1995), or where the error in the instruction worked to the defendant's benefit, *Commonwealth* v. *Puleio*, 394 Mass. 101, 108 (1985).

defense of another beyond a reasonable doubt. "The jury should . . . have been told that, if the defendant used excessive force in an otherwise appropriate exercise of . . . defense of another, . . . if death resulted from the use of excessive force, he should be found guilty of manslaughter." *Commonwealth* v. *Carlino*, 429 Mass. at 694. The lack of instruction regarding the use of excessive force in defense of another left the jury with "no correct understanding" of mitigation, *Commonwealth* v. *Johnson*, *supra*, with the result that the jury were "given the option of considering that a murder ha[d] been committed." *Commonwealth* v. *Santos*, 454 Mass. at 776. Cf. *Commonwealth* v. *Bolling*, 462 Mass. 440, 452 (2012) (lack of instruction on element of case relieved Commonwealth of burden of proof and created substantial risk of miscarriage of justice).

The majority concludes that the omission was immaterial because the instruction adequately conveyed, and the jury understood, that all aspects of the instruction on self-defense applied to both self-defense and defense of another equally.[11] The judge did not use the terms interchangeably. He used both terms when instructing on the circumstances where the appropriate use of self-defense or defense of another required acquittal. He did instruct on the use of excessive force in self-defense. He did not do so, however, when instructing on the mitigating impact of use of excessive force in defense of another. Thus, the instruction differentiated between the use of excessive force in self-defense and the use of excessive force in defense of another. The jury were thrice told that use of excessive force in self-defense reduced the offense from murder to manslaughter, but were not told that the same was true of the use of excessive force in defense of another.

A reasonable juror could have understood the use of exces-

[11]This contention might have had more force if the Model Jury Instructions on Homicide had been followed. As drafted in 1999, the model instructions contained an instruction on self-defense, followed by an instruction on defense of another. In the main, the 1999 model instructions refer to self-defense, followed by a single instruction on defense of another. Thus, under this formulation, the defense of another instruction was given only once and by general reference to all the previous references to self-defense. The revised Model Jury Instructions on Homicide, issued in 2013, contain the formulation sought by the trial judge here, that is, parallel references to both self-defense and defense of another throughout the instructions.

sive force instruction to mean what it said, that is, the excessive force instruction applied to self-defense, but not defense of another.[12] A reasonable juror might well be given the erroneous impression that the use of excessive force was in some manner less blameworthy and more likely to be excused in the context of self-defense (where a defendant is under personal attack) than in the situation where one person decides to go to the aid of another. This is not the law of the Commonwealth. See *Commonwealth* v. *Young*, 461 Mass. at 208-209.[13] "[T]he judge's omission created the significant possibility that the defendant was erroneously convicted of murder in the [second] degree instead of manslaughter." *Commonwealth* v. *Boucher*, 403 Mass. 659, 663 (1989).

b. *Defining defense of another.* The failure to give the requested instruction on defense of another, and thus define for the jury what defense of another meant, contributed to the risk of confusion and misdirection. Having been told that defense of another "mirrors" self-defense, the jury had no guidance as to what perspective to use in judging when deadly force was permitted — Frias's perspective, the defendant's perspective, or that of a reasonable person in the defendant's position. Consistent with the case law, the requested instruction tracked the model instruction verbatim, stating that "[a] person may lawfully use a dangerous weapon (or deadly force) in defense of a third person when

---

[12]The majority states, *ante* at note 15, that review from the perspective of "possible misunderstandings by reasonable jurors" applies only to instructional errors that lower the Commonwealth's burden of proof as to the elements of the offense, citing *Commonwealth* v. *Smith*, 427 Mass 245, 249 n.6 (1998), and *Commonwealth* v. *Medina*, 430 Mass at 804 n.4. These cases explore the difference between State and Federal standards on postconviction collateral review. Without wading into these waters, suffice it to say that on review of instructions on self-defense or defense of another, as to which the Commonwealth bears the burden of proof, our appellate courts have looked to what a reasonable juror would have thought, *Commonwealth* v. *Young*, 461 Mass. at 211, or could have misunderstood, *Commonwealth* v. *Clemente*, 452 Mass. 295, 323 (2008), or whether the jury were given an erroneous impression. See *Commonwealth* v. *Johnson*, 412 Mass. at 373; *Commonwealth* v. *Britt*, 465 Mass. 87, 96 (2013).

[13]The doctrine of defense of another is recognized for policy reasons "to discourage indifference to the plight of strangers, an ill that had been exposed in that era by the murder of Kitty Genovese in 1964." *Commonwealth* v. *Young, supra.*

a reasonable person in the actor's position would believe that such intervention was necessary for the protection of the third person, and in the circumstances as that reasonable person would believe them to be, the third person would have been justified in using a dangerous weapon (or deadly force) to protect himself." Model Jury Instructions on Homicide 58 (1999). See *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976); *Commonwealth* v. *Barbosa*, 463 Mass. 116, 135-136 (2012). Had this instruction been given, the jury would have known that they were permitted to find the defendant guilty of manslaughter, not murder in the second degree, based on the defendant's mistaken, though reasonable, belief that the victim of the attack (Frias) would have been entitled to use deadly force. See *Commonwealth* v. *Young*, *supra* at 209-210 & n.19; *Commonwealth* v. *Norris*, 462 Mass. at 141-143.[14]

That distinction is material here, because the jury were instructed on self-defense, and there were facts in dispute concerning whether Frias was the first aggressor. See note 2, *supra*. If Frias was the first aggressor, Frias forfeited his right to self-defense. See *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). It is not true, however, that defense of another was forfeited under these circumstances. If a jury found that a person in the defendant's position reasonably but incorrectly believed Frias to be the victim of the attack, the defendant was entitled to maintain that he acted in defense of Frias. See *Commonwealth* v. *Young*, 461 Mass. at 209. To this extent, the defense of another does not "mirror" self-defense, and there was a substantial risk that jury may have been misled by the failure to define defense of another and to instruct on excessive force in defense of another. We cannot charge "the jury with knowing and understanding legal definitions" of concepts this complicated. *Commonwealth* v. *LaPage*, 435 Mass. at 487, n.8. This is not a case where there is "little chance that the jury misunderstood" an instruction that was otherwise clear in context. *Commonwealth* v. *Clemente*, 452 Mass. 295, 323 (2008).[15]

---

[14]The majority correctly points out that on appeal the defendant misconstrues this instruction to be an alter ego instruction and has based an appellate argument in part on this misinterpretation of the instruction and the law. Because the instruction was correctly framed below, I have based this analysis on the instruction as requested.

[15]For this reason, reliance on *Commonwealth* v. *Clemente*, *supra*, see *ante*

c. *Instructions given on other offenses.* The fact that the instruction on the use of excessive force in defense of another was (for the most part, see note 11, *supra*) correctly given in those portions of the charge dealing with assault with intent to murder Roberto Francisco Sanchez Rios does not mean the jury must have clearly understood the parameters of the defense with respect to murder in the second degree and manslaughter. This gloss on the instructions requires us to assume that the jury discounted the instructions on the murder charges and understood that the instructions on the offense of assault with intent to murder were to be imputed to the murder charges. "As [defense of another] was an issue in this case, and where we have no indication as to the rationale or process behind the jury's decision, it would be inappropriate to speculate that they were not influenced by [the] flawed instruction." *Commonwealth* v. *Mc-Laughlin*, 433 Mass. 558, 563 (2001). Moreover, when the jury were properly instructed on the issue of use of excessive force in defense of another in relation to assault with intent to murder, they acquitted the defendant of that charge. Finally, the jury were instructed, in reference to the indictment on assault and battery causing substantial bodily injury, that the use of excessive force did not mitigate that crime in any respect. Thus, the jury were also clearly told to consider the mitigation issue separately for each offense.

The over-all impact on the jury of the correct instruction on a separate indictment charging assault with intent to murder cannot make up for the erroneous instructions on the murder charges. The one correct instruction was sandwiched between several incorrect ones, and the incorrect ones could only have misled the jury. See *Commonwealth* v. *McLaughlin*, *supra* at 562-563; *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 172. The incorrect

at 466-467, is misplaced. In *Clemente*, the judge instructed the jury, "A person may not use excessive force when intervening on behalf of another person. The actor's justification is lost if he uses excessive force." 452 Mass. at. 322. The instruction, viewed in isolation, appeared to foreclose mitigation. However, the challenged instruction followed a complete instruction on self-defense, as well as the complete instruction on defense of another in accordance with the model instructions. "It was clear in context that the instruction on self-defense, including the instruction on excessive force in self-defense, applied equally to the subject of defense of another." *Ibid.* This case involves the omission of the key instructions upon which *Clemente* relied, and a final instruction that erroneously stated the law.

instructions were the last statement to the jury, and the incorrect standard was communicated repeatedly. Compare *Commonwealth v. Young*, 461 Mass. at 210-211. The instructions as a whole were confusing and internally inconsistent. "[T]he center of gravity of the . . . instructions was strongly on the side of misstatement." *Commonwealth* v. *Grant*, *supra*, quoting from *Commonwealth* v. *Acevedo*, 427 Mass. at 717.

6. *Substantial risk of miscarriage of justice.* "Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice." *Commonwealth* v. *Randolph*, 438 Mass. at 298, quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). The accounts of the melee were not one-sided. They were conflicting and fractured. The shooting occurred in the midst of a brawl in the early morning hours in which various witnesses, most of whom were combatants, saw bits and pieces, and had predetermined loyalties. There was evidence that Zuniga presented no threat at the time he was shot, but the Commonwealth also introduced evidence from which the jury could find that Frias was under attack by four men, including Zuniga, and that the defendant acted in Zuniga's defense. The testimony regarding the defendant's statement to Frias that the defendant "did it for [him]," if believed, may well have been utterly fatal to the defense of identification. But the same admission, if believed, could also have been viewed by the jury either as probative of intent or further evidence of defense of another. In short, the evidence of intent was in dispute, and resolution of that dispute hinged largely on credibility determinations. The jury had rejected the Commonwealth's theory of premeditation based on their evaluation of the evidence of intent, and were left to sift through multiple and conflicting versions of events to determine what occurred. The "strength of the Commonwealth's case" on the issue of defense of another and excessive use of force in defense of another was "not overwhelming." *Commonwealth* v. *Bolling*, 462 Mass. at 452.

*Conclusion.* "Of course, 'a clear miscarriage of justice has occurred if [the defendant] was guilty of manslaughter but is now serving the penalty for murder.' " *Commonwealth* v. *McLaughlin*, 433 Mass. at 564, quoting from *Commonwealth* v.

.

*Richards*, 384 Mass. 396, 405 (1981). Because I cannot say either that the errors in the instructions "did not influence the jury, or had but very slight effect," *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983) (preserved error), or that I have no "serious doubt whether the result of the trial might have been different had the error not been made," *Commonwealth* v. *Acevedo*, 427 Mass. at 450, quoting from *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999) (unpreserved error), I respectfully dissent.