Following a jury trial in the District Court, the defendant was convicted of indecent assault and battery on a person over the age of fourteen and intimidation of a witness. The charges stemmed from an incident that occurred on April 7, 2014, at the home of the victim, who is the defendant's former girl friend and the mother of his daughter. The victim testified that the defendant came to her apartment, forced her to engage in sexual intercourse, and then told her not to call the police or he would kill her and her children.[2]
The defendant denied the allegations. In substantial part, the defense theory was that the victim was not credible and her accusations were fabricated. To that end, as defense counsel previewed in his opening statement, the defendant introduced evidence that approximately three years before the offense in question occurred, the defendant was charged with sexually assaulting the victim but the case was dismissed after the victim signed a written letter of recantation.[3] On cross-examination, defense counsel asked the victim about the recantation, which she acknowledged. During the prosecutor's redirect examination, the victim explained that she had recanted under pressure from the defendant's family. The victim also testified to some details about the previous assault, including that the defendant had pulled her hair causing her to fall down the stairs while she was pregnant with the defendant's daughter.
The judge appropriately responded to the prior bad act evidence by instructing the jury when the testimony first was admitted during cross-examination, and again during the prosecutor's redirect examination, that the evidence could be considered for impeachment and understanding the relationship between the victim and the defendant, but for no other purpose. The instructions, to which there was no objection, tracked the Model Jury Instruction almost verbatim and adequately guarded against any potentially prejudicial effect. See Criminal Model Jury Instructions for Use in the District Courts, Instruction 3.760 (2009).
For the first time on appeal, the defendant argues that the judge's instructions were erroneous because they permitted the jury to consider the prior alleged sexual assault to demonstrate the relationship between the victim and the defendant, whereas the jury should have been permitted to consider only the fact that the victim recanted for the purpose of impeachment. This argument is unavailing, if only because the prior bad act evidence was properly introduced to show the relationship between the parties. See Commonwealth v. Julien, 59 Mass. App. Ct. 679, 686 (2003). See also Commonwealth v. Seabrooks, 425 Mass. 507, 512 n.6 (1997) ; Commonwealth v. Bianchi, 435 Mass. 316, 322 (2001). Moreover, once the defendant solicited the testimony regarding the recantation, it was inevitable (and proper) that the recantation would be placed in context. See Commonwealth v. Mendes, 441 Mass. 459, 469 (2004) ("A witness may properly explain on redirect examination her testimony elicited on cross-examination"); Commonwealth v. Garcia, 470 Mass. 24, 37 (2014) (Commonwealth is entitled to rehabilitate its witness).
The defendant also argues that the judge should have given a limiting instruction regarding the prior bad act evidence during her final charge to the jury. However, the defendant neither asked for the instruction nor objected when it was omitted. "We therefore review to determine whether an error occurred and, if so, whether that error created a substantial risk of a miscarriage of justice." Commonwealth v. Arias, 84 Mass. App. Ct. 454, 464 (2013).
Here, even if we assume error, there was no substantial risk of a miscarriage of justice. The judge explicitly limited the jurors' use of the evidence twice during the victim's testimony, and her final instructions on the credibility of witnesses tracked the Model Jury Instructions. See Criminal Model Jury Instructions for Use in the District Courts, Instruction 2.260 (2009). Thus, considering the error in the context of the entire trial, we are confident that the defendant was not prejudiced. See Commonwealth v. Randolph, 438 Mass. 290, 298 (2002).
Judgments affirmed.

Shortly after the defendant left the apartment, the victim went to the hospital where she reported the assault and was examined by a sexual assault nurse examiner (SANE). The SANE nurse, the police officer who interviewed the victim and arrested the defendant, and a forensic scientist testified for the Commonwealth. The scientist testified that she performed a deoxyribonucleic acid (DNA) analysis on a vaginal swab collected from the victim during her examination at the hospital. She explained that the DNA profile obtained from the swab matched a DNA sample acquired from the defendant.

In his opening statement, defense counsel told the jury that "[o]ne of the things you're going to hear in this case is that when they broke up [the victim] lodged very similar accusations against Mr. Morales. And in the short [inaudible, low audio] gave the prosecutor in that case a sworn affidavit saying it never happened, he didn't do this to me, I want to drop the charges, I'm withdrawing my charges."