COMMONWEALTH *vs.* BARRY WAYNE BURBANK.

Hampden. December 7, 1982. — April 15, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Assault. Practice, Criminal,* Instructions to jury, Capital case. *Self-Defense. Malice.*

Where the evidence at a murder trial was sufficient to raise the issue whether the defendant had acted in self-defense when he shot the victim, who had pursued him into a narrow alleyway, the failure of the judge to include in his charge on self-defense an instruction that the defendant could be found guilty of manslaughter if the jury found he had used excessive force required this court, acting pursuant to G. L. c. 278, § 33E, to order a new trial. [793-795]

Where, at the trial of indictments for murder, assault and battery by means of a dangerous weapon, and assault with intent to murder, there was evidence tending to show that the defendant was being attacked and reasonably believed he was about to receive a serious beating by several persons and that he reasonably believed he could defend himself only by use of a deadly weapon, the judge's failure to submit the issue of self-defense to the jury for consideration in their deliberations on the assault charges created a substantial likelihood of a miscarriage of justice, requiring a new trial. [795-796]

At a murder trial, the evidence with respect to the existence of malice and deliberate premeditation including evidence that the defendant departed from a bar following a scuffle, obtained a handgun, and returned to the bar later the same evening, saying he would "straighten matters out" with the victim's brother, and that he shot the victim after repeated warnings, was sufficient to warrant denial of the defendant's motions for required findings of not guilty on so much of the indictment as charged murder. [796-797]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1980.

The cases were tried before *Griffin,* J.

*Philip X. Murray* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

NOLAN, J.  The defendant, Barry Wayne Burbank, was convicted by a jury of the murder in the first degree of Daniel Coakley.  He was also convicted of assault and battery by means of a dangerous weapon, and assault with intent to murder, upon Shaune Coakley.  Burbank was sentenced to life imprisonment on the murder charge and to concurrent terms of eight to ten years on the assault charges. He appeals all convictions, alleging various errors in the trial judge's jury instructions and in the denial of his motions for required findings of not guilty of murder in the first and second degree.  He also seeks relief under G. L. c. 278, § 33E.  Because we conclude that the judge's instruction on self-defense as to each indictment was insufficient, we reverse.

The following essential facts are not in dispute on appeal. Further facts necessary to understand the issues are set forth elsewhere in the opinion.

On the evening of December 19, 1979, Burbank, his friend David Avery, and Avery's girl friend attended a Christmas party at the Center of Town bar (bar) in Chicopee.  The party was given for the employees, patrons, and guests of the bar and of the Market Square Billiards, both of which are located in the Market Square building.  Following an argument and a brief shoving match with Lee Vincelette, an employee of the Market Square Billiards, Burbank was asked to leave the bar.  After he had been escorted to the door, another scuffle erupted and Burbank was pushed to the ground by Shaune Coakley, a former employee of the bar who was attending the party as a guest.  Shaune testified that he had observed the earlier fracas and had come over to assist in ejecting Burbank.

About five minutes after Burbank left, Avery also left the bar, located Burbank, and offered him a ride home.  Avery drove Burbank to a house in Springfield where they were joined by two men.  The four then drove to Enfield, Connecticut, where one of the two men entered an apartment building, returned ten minutes later, and handed a revolver to Burbank.  Burbank put the gun under his belt at his back.

The four then drove back to the bar. During the trip, Avery asked if Burbank was "going to do anything crazy." Burbank answered in the negative but said that he wanted to "straighten matters out with this guy." He also said that if "the guy wanted to fight him one-on-one that he would be glad to accommodate him. He just didn't want a bunch of his buddies jumping in or anything." Burbank appeared calm at this time. There was testimony that the bar had a reputation for fights and that "cliques of people hung around" the Market Square Billiards.

When they arrived at the bar, Burbank said, "This is my beef," and entered alone. Inside, he apologized to Vincelette and the two shook hands. Burbank also spoke with Ernest LaFlamme, the managing bartender. Burbank told Avery, who had rejoined his girl friend, that everything was straightened out. Burbank then went up to the bar, where he spoke with a man and a woman seated there. Shaune Coakley sat down at the bar across from Burbank and asked him "what the f--- he was doing back there." The two exchanged epithets and Shaune motioned for Burbank to come around the bar. When Burbank refused, Shaune walked around the bar and stood next to him. Burbank told Shaune that Shaune "was going to . . . get it and all [his] friends were going to . . . get it." Shaune replied, "Outside."

Burbank walked to the door and Shaune followed him. At this point, the testimony varies. Shaune Coakley testified that, as soon as Burbank stepped outside the bar, Burbank pulled a gun from under his coat, turned, and shot from a distance of seven to nine feet, hitting Shaune in the knee. Avery testified that Burbank told him on the day following the incident that he had to shoot because several men jumped him at the door. Another witness testified that, although he did not see Shaune get shot, he did see the right side of a man holding a gun through the door.

LaFlamme was the first person out the door after the shooting. He saw Burbank walking away near the corner of the building and shouted, "[S]top." Burbank turned and

may have taken one or two steps back toward the bar. As other people came out of the bar, Burbank turned and ran down a nearby alley.

Six or eight people chased Burbank down the alley. The exact route of the chase is unclear, but it apparently continued through several alleys, a parking lot, and down or across a few streets. At some point, Burbank turned and fired a shot which passed over his pursuers' heads and ricocheted off a building. Avery testified that Burbank later said he had to fire because "they were going to jump me." At least three people, Daniel Coakley, Randy Wood and John Moriarty, continued the pursuit.

Wood testified that as he entered another alley he saw Burbank, his back toward a garage, facing Daniel Coakley, who was standing on a wooden platform some five feet in front of Burbank. Wood estimated that he was about thirty-five feet behind Daniel, whose back was to him. Wood heard Daniel say, "Arry [sic], come on, you know me. Are you going to shoot me, too?" Wood did not hear Burbank say anything, although he thought there could have been other conversation. According to Wood, Daniel spoke in a low, calm voice and held his hands out from his body. Burbank then started running toward a row of hedges next to the garage and Daniel ran down the platform stairs after him. At the bottom of the stairs, Daniel either stopped or slowed down and Burbank, who "looked like he was backed up against the hedges leaning on them with one hand," shot him. Burbank then ran between the hedges and the garage. Wood pursued him but lost sight of him. Wood did not recall seeing anyone else in the alley at the time of the shooting. He testified that the space between the hedges and the garage was "pretty tight" but that he had no problem running through it. He also testified that one could go through the hedges and into the parking lot on the other side.

Moriarty testified that he entered the "walkway" and approached to within fifteen or twenty feet of the platform. He heard Burbank say to Daniel, "[D]on't come near me

or I'll kill you," and he heard Daniel say words to the effect that no one would hurt Burbank and that Burbank could put the gun down and leave or come back with him. Daniel had his hands "up from his body." Burbank again threatened to kill Daniel if he came near. Moriarty testified that then "[t]he accused turned around to take a couple of steps, Danny stepped down off the platform a couple feet and he [Burbank] turned and shot." At the time of the shooting, Burbank was "[a] couple steps down on the side of the garage . . . in-between the bushes and the garage," about ten feet from the victim. After the shot, Moriarty ran back to the bar to summon an ambulance. He testified that he saw one other person in the alley when he first entered it but that the person was gone when he looked a few seconds later. After the shot, Moriarty heard a voice, apparently coming from the parking lot on the other side of the hedges, say, "[C]all an ambulance."

1. *The instructions on the murder indictment.* In the charge on the murder indictment, the judge instructed the jury on murder in the first degree by reason of deliberate premeditation; murder in the second degree as a killing with malice but without deliberate premeditation, or as a killing occurring during flight following the commission of a felony not punishable by life imprisonment; voluntary manslaughter as the result of an intentional killing upon reasonable provocation in the heat of passion; involuntary manslaughter; and self-defense as a complete defense to the charge of murder. The defendant did not request, and the judge did not give, instructions on the use of excessive force in self-defense as a mitigation of murder to manslaughter.[1] The defendant does not press on appeal the objections which he made to the charge. In the absence of requests for instructions and proper objections to the charge given, we review the defendant's challenges to his murder conviction

[1] The judge also gave instructions concerning: intoxication as a defense to a charge of deliberate premeditation; the right of citizens who witness a felony to effect an arrest of the perpetrator; and consciousness of guilt as evidenced by flight and efforts to avoid arrest.

under G. L. c. 278, § 33E. *Commonwealth* v. *Chasson,* 383 Mass. 183, 188-190 (1981).

A criminal defendant is entitled to an instruction on self-defense if the evidence, viewed in the light most favorable to him, is sufficient to raise the issue. *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). In *Harrington,* we set forth the evidentiary requirements for such a charge when the defendant used a deadly weapon. "There must be evidence warranting at least a reasonable doubt that the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case. *Commonwealth* v. *Harris,* 376 Mass. 201, 208 (1978), and cases cited. Absent the latter two elements, an instruction on manslaughter because of reasonable provocation or because of the use of excessive force in self-defense may be warranted." *Commonwealth* v. *Harrington, supra* at 450.

The evidence in this case, as the trial judge recognized, warranted an instruction on self-defense. There was evidence that Burbank actually believed that he was in imminent danger of serious bodily harm and that he had no recourse but to use the gun in self-defense when he shot Daniel Coakley. Avery testified that, on the morning following the incident, Burbank telephoned him and told him that he (Burbank) thought he had killed someone. Avery, who was not aware that Daniel Coakley had been shot, replied that the person Burbank shot was only hit in the leg. Avery described Burbank's response to this as follows: "He said, no, he says, I was chased into the alleyway and I had to fire. He said they were going to jump me." Avery also described the conversation in these terms: "He said he was scared and people were chasing him and he had to fire. . . . I remember him saying something about he turned around and he had to fire because they were chasing him. He didn't

want to be beaten up." Since these statements were admitted without limitation, their probative effect was not limited by their hearsay character. *Commonwealth* v. *Houston,* 332 Mass. 687, 690-691 (1955), and cases cited. The jury therefore could have viewed this evidence as a basis for finding that Burbank had a right to defend himself with a deadly weapon.

To the extent the judge's charge dealt only with the defendant's right to defend himself with a deadly weapon, the charge was sufficient. However, the judge's charge presented self-defense as an all or nothing proposition — either a complete defense or, if excessive force was used, no defense at all.[2] On the present facts, once the issue of self-defense had been fairly raised, the jury should have been instructed on "the legal consequence of using manifestly disproportionate violence in the supposed exercise of the right of self-defence." *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966). If the jury were satisfied that Burbank had the right to use force to defend himself but that the force he used was excessive in all the circumstances, they would have been warranted in finding Burbank guilty only of manslaughter. The judge's failure to make this known to the jury requires that we reverse Burbank's conviction of murder in the first degree and order a new trial on that indictment.[3] *Id.* at 213.

2. *The failure to instruct on self-defense as it related to the assault charges.* Avery testified that on the day following the incident, when he spoke with Burbank by telephone, Burbank told him that "he [Burbank] was jumped

---

[2] The judge told the jury that "[i]f the person used force exceeding what was necessary under existing circumstances, then the defendant becomes the assailant and the right of self-defense fails."

[3] In *Commonwealth* v. *Kendrick,* 351 Mass. 203, 212 (1966), we set forth factors which the jury may properly consider on the issue of excessive force. Further, language in *Commonwealth* v. *Stokes,* 374 Mass. 583, 591-593 (1978), concerning jury instructions as to the prosecution's burden of proof in a case raising issues of self-defense, reasonable provocation, and excessive force also may be helpful.

at the door and he shot one guy and he had to shoot one guy in the knee to get these guys off him." The defendant contends that this evidence, together with the fact that he was ordered outside by Shaune Coakley in the midst of persons who were apparently friends of Shaune, warranted an instruction on self-defense as to the assault charges. We agree. Avery's testimony was admitted without limitation, and the jury could therefore consider it for its full probative effect. *Commonwealth* v. *Houston,* 332 Mass. 687, 691 (1955), and cases cited. We think it possible that the jury could infer from the statement that Burbank was being attacked and that he reasonably believed he was about to receive a serious beating and, further, given the number of people possibly involved, that he reasonably believed he could defend himself only by use of a deadly weapon. Thus, the evidence, viewed in the light most favorable to the defendant, obligated the judge to instruct on self-defense as to the assault charges. "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon." *Commonwealth* v. *Campbell,* 352 Mass. 387, 398 (1967), quoting *People* v. *Carmen,* 36 Cal. 2d 768, 773 (1951).

The judge's instruction on self-defense related only to the murder indictment. Because the judge did not submit the issue of self-defense to the jury as a consideration in their deliberations on the assault charges, the instructions failed to "impress on the jury the critical nexus between the elements of the [assault crimes] charged and the absence of self-defense." *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 691 (1976). We must consider whether the error in the instructions created a substantial likelihood of a miscarriage of justice. Because the instructions raise a serious question of the accuracy of the verdict, we conclude that there must be a new trial. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

3. *The denial of the motions for required findings of not guilty.* At the close of the evidence, the defendant filed motions for required findings of not guilty on so much of the

murder indictment as charged murder in the first degree and murder in the second degree. Mass. R. Crim. P. 25(a), 378 Mass. 896 (1979). The motions were denied.[4] Following the verdict, the defendant timely renewed his motions for required findings of not guilty.[5] Mass. R. Crim. P. 25(b)(2), 378 Mass. 896 (1979). These motions were also denied. There was no error.

We view the evidence in the light most favorable to the Commonwealth to determine whether there was sufficient evidence for the jury to infer malice and deliberate premeditation. *Commonwealth* v. *McInerney*, 373 Mass. 136, 153 (1977). The question is the same as to all motions because the "state and quantum of the evidence was the same when each motion was filed and denied." *Id.*

Focusing on the events which took place from the time when Burbank left the bar with Avery earlier in the evening, including Burbank's acceptance of a gun from a companion and his declaration on the ride back to the bar that he wanted to "straighten matters out with this guy," and on the events which took place in the alley, where he repeatedly warned the victim that he would be killed if he came any closer, the jury could reasonably infer premeditation. The jury could also reasonably infer malice from the use of a deadly weapon. *Commonwealth* v. *Stillwell*, 387 Mass. 730, 733 (1982). The jury, of course, did not have to believe the defendant's evidence of self-defense.[6] There was also no evidence of combat between Burbank and Daniel Coakley.

---

[4] The defendant also filed a motion for a required finding of not guilty on so much of the indictment as charged manslaughter. This motion was also denied but the defendant does not contest this denial on appeal.

[5] The defendant also timely filed a motion for a new trial, apparently alleging insufficiency of the evidence. The defendant does not argue that denial of this motion was error.

[6] Because the defendant did not contest the killing and chose to put the Commonwealth to proof on the issues of lack of provocation and lack of self-defense, the question whether the killing was intentional was not seriously raised before the jury. We note, however, that the judge did instruct on involuntary manslaughter. If such an instruction was not warranted on the evidence — an issue we do not decide — its inclusion in the charge was not prejudicial to the defendant.

4. *Conclusion.* The judge's failure to charge on the legal effect of excessive force requires reversal of Burbank's murder conviction under G. L. c. 278, § 33E. Similarly, the judge's failure to charge on self-defense as it related to the assault charges created a substantial risk of a miscarriage of justice, *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967), and requires reversal of those convictions. We therefore reverse the judgments, set aside the verdicts, and remand the case for a new trial on all indictments.

*So ordered.*