### COMMONWEALTH *vs.* JEFFREY J. JOHNSON.

Plymouth. January 6, 1992. - April 7, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Defense of Others. Practice, Criminal,* Instructions to jury. *Evidence,* Expert opinion.

At a murder trial in which the defendant interposed a claim that he had acted justifiably in defense of a third person, it was error requiring reversal of the defendant's first degree murder conviction for the judge to fail to instruct the jury (1) that the defense of another, if warranted by the circumstances and carried out properly, constitutes a complete defense and not merely a mitigating circumstance and (2) that the use of excessive force in defense of another does not cause the defendant to lose the benefit of the defense entirely, but instead may warrant a finding of manslaughter. [370-373]

This court restated the rule that an expert witness may testify to an opinion based on facts or data not in evidence, if the facts or data are independently admissible and are a permissible basis for an expert to consider in forming an opinion. [374]

INDICTMENT found and returned in the Superior Court Department on October 7, 1985.

The case was tried before *William H. Carey,* J.

*Donald A. Harwood* of New York, for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court, the defendant was convicted of murder in the first degree by reason of deliberate premeditation, larceny of a motor vehicle, receiving stolen property, and unlawfully carrying a firearm.[1]

---

[1]The defendant was sentenced to life imprisonment on the murder conviction and to concurrent terms of from six to eight years on the larceny

Appealing only from his murder conviction, the defendant challenges portions of the trial judge's instructions to the jury concerning defense of another, malice, and provocation; the denial of his motion to sever; the admission in evidence of an autopsy report and the testimony of two medical examiners concerning the cause of the victim's death; and the judge's refusal to declare a mistrial. The defendant also seeks a reduction of the murder verdict to manslaughter pursuant to G. L. c. 278, § 33E (1990 ed.). We reverse the judgment and remand the case for a new trial.

At trial, it was undisputed that the defendant shot the victim, Christopher Flye. The principal question was whether the defendant acted justifiably in defense of a third person, the codefendant, Shawn Egela. The judge recognized the necessity for an instruction on the law relating to defense of another. *Commonwealth* v. *Martin*, 369 Mass. 640, 644 (1976). It is his instruction on this subject that forms the principal basis for the defendant's appeal and the reason for our reversal of the conviction. See *id.* at 644.

We summarize the evidence in the light most favorable to the defendant, looking first to that part of his own testimony and that of his codefendant relating to the events leading up to and surrounding the homicide. "It is of course immaterial that the triers might very well, in the end, lend no credence whatever to the defendant's version of the facts." *Commonwealth* v. *Martin, supra.*

On September 20, 1985, the defendant shot the victim, Christopher Flye. Nine months before the shooting they had been roommates and both were arrested for burglarizing a neighbor's house. Eventually, the defendant confessed to committing the burglary alone, clearing the victim. The victim, however, was evicted from the house in which they had been living.

conviction, from three to five years on the receiving stolen property conviction, and from three to five years on the firearm conviction.

The codefendant, Shawn F. Egela, was acquitted of all the same charges except that of unlawful carrying of a firearm.

On the day of the shooting, the defendant and the code-fendant, Shawn Egela, drove in an automobile to Wareham. The defendant did the driving; Egela was in the passenger seat. They encountered the victim at a convenience store. During this brief encounter Egela took a handgun out of the glove compartment and twice fired it out the passenger side window into the nearby woods. The victim walked over to the passenger side and asked Egela if he could check out the gun. Egela gave the gun to the victim. According to the defendant and Egela, the victim held the gun to the defendant's head and threatened to shoot the defendant. The victim, still in possession of the gun, then walked away with his girl friend.

Egela followed the victim and attempted to reclaim the gun. The defendant followed Egela. At some point, the victim struck Egela in the face with the handle of the gun. Egela and the victim began wrestling and fighting. Egela is five feet, six inches tall and the victim was six feet, two inches tall. The defendant did not intervene in the fight except to pry the gun out of the victim's hand. He then stepped aside and watched as the two men continued fighting. Several times the victim smashed Egela's head on the pavement. The defendant tried unsuccessfully to pull the victim off Egela. The defendant thought the victim was going to kill Egela. He then shot the victim, who continued to pound Egela's head into the pavement. A few seconds later, the defendant shot a second time, apparently without any effect. The defendant then shot the victim twice more. He shot the victim four times because he thought Egela was "getting killed," and he wanted "to stop what was happening."

1. *Instructions on defense of another.* The judge charged in part:

> "[T]he defendant Johnson in this case has raised the issue of what we call a third person defense. . . . [T]he burden is upon the Commonwealth again to prove by evidence beyond a reasonable doubt that the defendant Johnson either did not have any such right to defend

another under the circumstances found by you, or that if he did have any such right, under the circumstances found by you, that it was used excessively. . . . [I]f he did have a right, and if there was a legitimate exercise of that right, then the crime committed by him would be manslaughter and not murder.

"[An] actor . . . is justified in using reasonable force against another to protect a third person when, number one, a reasonable person in the actor's position would believe his intervention to be necessary for the protection to the third person; and two, in the circumstances as that a reasonable person would believe them to be, the third person would be justified in using such force to protect himself.

"The reasonableness of the belief, however, may depend on the relationship among the persons involved.

"The actor's justification is lost if he uses excessive force, that is, aggressive or deadly force unwarranted for the protective purpose.

". . .

"[T]he right to use a deadly weapon if that right existed at all in the first place, is gone once any threat has dissipated. And the actor's justification is lost if he uses excessive force, that is, aggressive or deadly force unwarranted for protective purpose."

The defendant argues that these instructions were erroneous because (1) the defense of another, if warranted by the circumstances and carried out properly, constitutes a complete defense and not merely a mitigating circumstance, as the judge instructed, and (2) the use of excessive force in defense of another does not cause the defendant to lose the benefit of the defense entirely, as the judge instructed, but instead may warrant a finding of manslaughter. We agree that there was error in the charge.

The part of the instruction quoted above concerning defense of another was erroneous because a defendant who is

justified in using deadly force for the protection of a third person is relieved of all criminal liability. Justified deadly force in defense of another does not reduce the crime from murder to manslaughter as the judge charged. See *Commonwealth* v. *Martin, supra* at 649. See also *Commonwealth* v. *Monico*, 373 Mass. 298, 303 (1977) ("As is the case in the area of self-defense, there must be a threat of harm to the person being protected before its invocation as a defense in a criminal case is justified"). The Commonwealth concedes that the charge on this point was erroneous but argues that the error was harmless beyond a reasonable doubt because the jury found the defendant guilty of murder in the first degree, not manslaughter, thereby, according to the Commonwealth, rejecting the defendant's claim of defense of another. Whatever merit there might be in the Commonwealth's argument in other circumstances is dissipated here by the fact that the judge made a second error concerning the use of excessive force in defense of another.

In analyzing a defendant's right to defend himself with a deadly weapon we have said that self-defense is not an all or nothing proposition. *Commonwealth* v. *Burbank*, 388 Mass. 789, 795 (1983). In other words "once the issue of self-defense has been fairly raised, the jury should [be] instructed on 'the legal consequence of using manifestly disproportionate violence in the supposed exercise of the right of self-defence.' *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966). If the jury [conclude] that [the defendant] had the right to use force to defend himself but that the force used was excessive . . . they would [be] warranted in finding [the defendant] guilty only of manslaughter." *Commonwealth* v. *Burbank, supra.* The rule is no different where the defendant's justification for the use of force is defense of another. *Commonwealth* v. *Martin, supra* at 650 (trend has been to interweave closely the justification of defense of a third person with self-defense). J.R. Nolan & B.R. Henry, Criminal Law § 680, at 592 (1988) ("justification [of defense of others] appears to be coextensive with the right of self-defense"). Model Penal Code § 3.05 (1) explanatory note (Offi-

cial Draft 1985) (rule of justification for use of force to protect other person same as rules that govern self-defense). See also *id.* at §§ 3.04, 3.09. *Commonwealth* v. *Martin*, apparently relied on by the judge, is not to the contrary. There the court stated that "[t]he actor's justification is lost if he uses excessive force, e.g., aggressive or deadly force unwarranted for the protective purpose." *Id.* at 649. One who uses excessive force in defense of another does lose the justification, i.e., the person is not relieved of criminal liability. The use of excessive force is not, therefore, justified. Instead, the *degree* of criminal liability becomes the issue, and the defendant's guilt may be mitigated if, in the circumstances, he had a right to use force in defense of another, but used excessive force. Cf. *Commonwealth* v. *Burbank*, *supra* at 795 (jury should be instructed they may find defendant guilty only of manslaughter, not murder, where defendant had right to use force in self-defense but used excessive force); *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980) (instruction on manslaughter warranted because of reasonable provocation or because of the use of excessive force in self-defense); *Commonwealth* v. *Stokes*, 374 Mass. 583, 593-594 (1978) (instruction that defendant guilty only of manslaughter, not murder, where defendant privileged to use force in self-defense but used excessive force); *Commonwealth* v. *Kendrick*, *supra* at 210 (circumstances of homicide committed in self-defense mitigate crime from murder to manslaughter).

The judge's instruction failed to make the distinction between justification and mitigation. Without the benefit of such a distinction the jury were undoubtedly left with the erroneous impression that, if excessive force was used, any killing in such circumstances would be murder and not manslaughter. As we have said, the instruction also took away the jury's option of finding the defendant not guilty because the defendant exercised reasonable force. Therefore, the jury were left with no correct understanding of the defendant's principal, if not only, defense. As a result, the defendant was deprived of a fair trial. We must therefore reverse the de-

fendant's conviction of murder in the first degree and order a new trial on that indictment.

2. *Other issues.* We briefly address the only other issue which may arise on retrial.

The defendant claims error arising out of the treatment of the autopsy report and the testimony of two medical examiners, neither of whom performed the autopsy. The autopsy report was not admitted in evidence, and some question exists as to the extent to which it played any role in the testimony of the two experts. It is enough for our purposes here to restate the rule that "an expert [may base] an opinion on facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion." *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531 (1986). Contrast Proposed Mass. R. Evid. 703.

3. *Conclusion.* We reverse the judgment, set aside the verdict, and remand the case for a new trial on the murder indictment.

*So ordered.*