SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. KENNETH JOSE SANTANA-RODRIGUEZ

 
 Docket:
 SJC-13753
 
 
 Dates:
 June 4, 2025 - October 14, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Homicide. Self-Defense. Intent. Evidence, Self-defense, Intent. Wanton or Reckless Conduct.
 
 

             Indictment found and returned in the Superior Court Department on May 22, 2023.
            Questions of law were reported by Jeremy Bucci, J., to the Appeals Court.
            The Supreme Judicial Court granted an application for direct appellate review. 
            Daniel Hagan (Daniel D. Kelly & Kyle J. DeSousa also present) for the defendant.
            Travis H. Lynch, Assistant District Attorney, for the Commonwealth.
            GAZIANO, J.  The Commonwealth charged the defendant, Kenneth Jose Santana-Rodriguez, with murder in the first degree for causing the death of Trung Tran.  Tran was an innocent bystander tragically killed when the defendant, involved in an altercation with another person, fired two gunshots at his opponent.  After the shooting, the defendant informed police that the other person, Irving Sanchez, started an argument, displayed a firearm in his waistband, and threatened, "You know what's about to happen."  According to the defendant, he responded to the threat of deadly force by drawing a pistol and twice firing at Sanchez.  One gunshot struck Tran, who was nearby, in the chest.  
            This interlocutory appeal raises the issue of transferred intent self-defense.  The Commonwealth may rely on the theory of transferred intent to prove the mental state element of murder in the first degree.  Under this theory of imputed liability, the defendant's intent to kill Sanchez is transferred to the killing of Tran.  We consider whether, and to what extent, the defendant's right to defend himself against the imminent danger of death or serious bodily harm posed by Sanchez excuses the fatal shooting of Tran, an unintended victim.  To date, we have not recognized transferred intent self-defense as a part of our common-law homicide jurisprudence.  Given the importance and novelty of the issue, a Superior Court judge reported the following questions pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004).  First, assuming the defendant's version of the facts, is transferred intent self-defense an available defense in the Commonwealth?  Second, if so, does it present a complete defense or only a partial defense?[1]  
            We conclude that a defendant's lawful self-defense against an assailant may excuse the killing of an unintended victim, such as an innocent bystander.  This is not, however, a defense to wanton or reckless conduct.  A defendant may therefore be held criminally liable for the lesser included offense of involuntary manslaughter if the Commonwealth proves that a defendant's exercise of self-defense was wanton or reckless so as to create a high degree of likelihood that substantial harm would result to an unintended victim.  
            Background.  On May 22, 2023, a Hampden County grand jury returned an indictment charging the defendant with the murder of Tran in violation of G. L. c. 265, § 1.  Subsequently, a Superior Court judge reported the case to the Appeals Court to present questions of law addressing the issue of transferred intent self-defense.  We allowed the Commonwealth's application for direct appellate review.  
            The Commonwealth and the defendant agree on the following facts for purposes of answering the reported questions.  On January 28, 2023, at around 7 P.M., Holyoke police officers responded to 911 calls reporting shots fired at a shopping mall.  Rushing past fleeing shoppers, officers were told that the shooter still was in a nail and hair salon.  There, an officer arrested the defendant without incident.  The victim, a salon employee, had sustained a single, fatal gunshot wound to the chest.  
            After being provided his Miranda rights, the defendant admitted without prompting that he, a licensed firearm owner, had shot the victim.  According to the defendant, he went to the salon with his girlfriend, Sacha Santiago, to get a pedicure.  Sanchez, who had been in a relationship with Santiago, entered the salon and started an argument with the defendant.  Sanchez raised his shirt to reveal a firearm, and stated, "You know what's about to happen."  Believing "it was him or Sanchez," the defendant fired at Sanchez.  Police seized a nine millimeter Glock 19 pistol from the defendant with eight live rounds remaining in the ten-round magazine.  They also recovered two spent nine millimeter shell casings from the salon floor.
            Santiago related a different version of the event.  According to Santiago, she considered the defendant only a friend and was dating Sanchez, with whom she shared a child.  Sanchez called Santiago and then arrived at the salon.  Observing the defendant sitting next to Santiago, Sanchez demanded to know the nature of their relationship.  Santiago assured Sanchez that she was not dating the defendant.  Nonetheless, Sanchez slapped the defendant with an open hand.  In response, the defendant pulled out a firearm and, ignoring Sanchez's plea to be calm, fired it.  An uninjured Sanchez fled the salon, tripping over the victim on his way out.  
            Other witnesses provided varying accounts of the incident.  In general, the witnesses informed officers that the defendant and Santiago entered the salon and sat down next to each other to receive pedicures from Tran and another employee.  Sanchez entered and argued with the defendant and Santiago.  He struck the defendant with an open hand or closed fist.  Next, the defendant pulled out a gun and fired, striking Tran, who was located near the foot of the salon chair occupied by the defendant.  No witness told police that Sanchez was armed, although one witness observed Sanchez touch the area around his belt just prior to the shooting.  
            Discussion.  This court has not yet decided whether a defendant, charged with murder, is entitled to assert a claim of transferred intent self-defense to excuse the killing of an unintended victim.  Commonwealth v. Pina, 481 Mass. 413, 420-421 (2019).  Before answering the reported questions, we provide context by discussing briefly the right of self-defense and the transferred intent theory of liability.  Next, we survey approaches utilized by other States that have addressed the issue of transferred intent self-defense either by case law or statute.  Finally, we conclude that a defendant's right to exercise lawful self-defense to protect him- or herself against an imminent danger of death or serious bodily harm posed by an assailant may excuse the murder of an unintended victim.  The right of self-defense, however, does not shield a defendant from liability for the lesser included offense of involuntary manslaughter based on wanton or reckless conduct. 
            In the Commonwealth, the common-law crime of murder is defined broadly as an unlawful killing with malice aforethought.  See, e.g., Choy v. Commonwealth, 456 Mass. 146, 150, cert. denied, 562 U.S. 986 (2010); Commonwealth v. Boyajian, 344 Mass. 44, 48 (1962).  A killing is lawful, and therefore excused or justified, if committed in the proper exercise of self-defense.  See Commonwealth v. Williams, 481 Mass. 799, 805 (2019); Commonwealth v. Walczak, 463 Mass. 808, 817-818 (2012) (Lenk, J., concurring); Commonwealth v. Whitman, 430 Mass. 746, 755-756 (2000).  Self-defense, if "carried out properly," constitutes a complete defense.  Commonwealth v. Little, 431 Mass. 782, 787 (2000).  See Commonwealth v. Rogers, 459 Mass. 249, 269, cert. denied, 565 U.S. 1080 (2011), S.C., 494 Mass. 629 (2024) (defendant commits no crime in lawful exercise of self-defense).  
            Where the evidence raises a question of self-defense, the Commonwealth is required to prove beyond a reasonable doubt that the defendant did not act in lawful (proper) self-defense.  Commonwealth v. Ortega, 480 Mass. 603, 611 (2018).  Commonwealth v. Glacken, 451 Mass. 163, 166-167 (2008).  The Commonwealth may do so by showing that "(1) the defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; [or] (2) a reasonable person in the defendant's position would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; [or] (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force;[2] or (4) the defendant used more force than was reasonably necessary in all the circumstances" (citation omitted).  Commonwealth v. Roman, 495 Mass. 412, 431 (2025).  See Model Jury Instructions on Homicide 24-25 (2018).
            The excessive use of force in self-defense is a mitigating circumstance that may justify a conviction of voluntary manslaughter, a lesser included offense to murder in the first degree.  Commonwealth v. Hinds, 457 Mass. 83, 91 (2010).  See Commonwealth v. Deconinck, 480 Mass. 254, 272 (2018).  "The question of what force is needed in self-defense . . . is to be considered with due regard for human impulses and passions, and is not to be judged too strictly."  Model Jury Instructions on Homicide 24.  See Commonwealth v. Kendrick, 351 Mass. 203, 211 (1966) ("ordinarily the question how far a party may properly go in self-defense is a question for the jury, not to be judged of very nicely, but with due regard to the infirmity of human impulses and passions" [citation omitted]).  
            Next, we turn to the doctrine of transferred intent.  The mental state of malice aforethought necessary to convict a defendant of deliberately premeditated murder in the first degree requires the Commonwealth to prove that the defendant "consciously and purposefully intended to cause the victim's death" (quotation and citation omitted).  Commonwealth v. Colas, 486 Mass. 831, 836-837 (2021).[3]  The doctrine of transferred intent is a well-established theory of criminal liability for the killing of an unintended victim.  Pina, 481 Mass. at 420.  Where a defendant purposefully attempts to kill one person, but by mistake or accident kills another, the defendant's felonious intent is transferred from the intended victim to the unintended victim.  Id.  See Commonwealth v. Andrade, 488 Mass. 522, 527 (2021) (Commonwealth need not prove intent to kill victim because intent could be transferred from intent to kill opponent); Commonwealth v. Vazquez, 478 Mass. 443, 452-453 (2017) (applying transferred intent doctrine to misidentified victim); Commonwealth v. Taylor, 463 Mass. 857, 863 (2012) ("defendant is treated under the law as if he intended to kill the bystander").  Simply put, in a shootout, lethal "intent[] follows the bullet" (citation omitted).  State v. Gilmore, 336 Or. App. 706, 713 (2024).  
            The parties identify two approaches to transferred intent self-defense.  In Pennsylvania, transferred intent self-defense is a complete defense to criminal liability without exception for reckless or negligent conduct.  Commonwealth v. Fowlin, 551 Pa. 414, 415, 419 (1998).  See State v. Betts, 316 Kan. 191, 206 (2022) (describing Fowlin decision as "an outlier").  The Fowlin defendant, blinded by pepper spray, fired a handgun in the direction of armed attackers inside a nightclub.  Fowlin, supra at 415.  He killed the initial assailant, wounded another assailant, and wounded a bystander.  Id.  Recognizing the defendant's justifiable self-defense, the government dismissed all charges with respect to the attackers but charged the defendant with reckless endangerment and aggravated assault for the shooting of the bystander.  Id. at 416.  The Supreme Court of Pennsylvania excused the defendant from criminal liability for injuring the bystander where he acted in lawful self-defense against the armed assailants.  Id. at 415, 422.  A deadly attack, the court reasoned, does not provide opportunity for "[l]eisurely assessment" of danger posed to others in the vicinity.  Id. at 420.  The court declined to "punish[] a person who was acting within his instinct for self-preservation and . . . within the boundaries of our law [of self-defense]."  Id. at 421. 
            In contrast, most States, either by case law or statute, extend the privilege of self-defense to injury or death of an unintended victim only if it is not caused by the defendant's reckless or negligent conduct.  Betts, 316 Kan. at 202–206 (collecting cases and statutes).  See, e.g., People v. Koper, 2018 COA 137, ¶¶ 14-23 (trial judge erred in rejecting defendant's self-defense jury instruction where defendant, punched by assailant, drew firearm in presence of security guard and uninvolved bar patron); Howard v. State, 307 Ga. 12, 23 (2019), overruled in part on other grounds, Johnson v. State, 315 Ga. 876, 889 n.11 (2023) (transferred self-defense justification not available "if the accused shot carelessly and in reckless and wanton disregard of the danger resulting to the bystander" [citation omitted]); Betts, supra at 202 (reckless use of force against innocent bystander "lies outside" statutory immunity for self-defense); Ruffin v. State, 10 Md. App. 102, 106 (1970) ("even though appellant purportedly was acting in self-defense, his action in firing the weapon in a direction of the apartment building, where he had cause to believe that third parties were present, was so grossly negligent as to constitute criminal negligence"); People v. Jackson, 390 Mich. 621, 624 (1973) (unintended killing of innocent bystander is not murder if justifiably committed in proper self-defense, but may be involuntary manslaughter based on recklessness); People v. Morris, 109 A.D.2d 413, 415–416 (N.Y. 1985) (defendant, in justified exercise of self-defense, escapes criminal liability for unintended injury to bystander, unless injuries to bystander were caused by defendant's negligence or recklessness); Holloman v. State, 2002 WY 117, ¶ 24 ("The general rule is that if a person acting in necessary self-defense unintentionally injures or kills a third person, he is not guilty of homicide or assault and battery. . . .  The rule is not absolute and may not apply if the defendant acted recklessly or negligently").[4]
            About one-half of the States have enacted statutes shielding an individual exercising lawful self-defense from criminal liability for the death of an unintended victim.  All provide "a self-defense privilege extending to unintended harm to an innocent bystander . . . and do not allow it unconditionally."  Betts, 316 Kan. at 202.  The statutory language differs across these jurisdictions in the level of care a defendant is required to exercise toward innocent bystanders.  For example, some States' statutes generally provide that homicide is excusable when "committed by accident and misfortune," in doing any "lawful act by lawful means" with "usual and ordinary caution" (or without "criminal negligence") and without any unlawful intent.  See, e.g., Cal. Penal Code § 195; Fla. Stat. § 782.03; Idaho Code Ann. § 18-4012(1); Miss. Code Ann. § 97-3-17(a); N.M. Stat. Ann. § 30-2-5(A); Okla. Stat. tit. 21, § 731(1); S.D. Codified Laws § 22-16-30; Wash. Rev. Code § 9A.16.030.  See also Mo. Rev. Stat. § 563.070(1) ("Conduct which would otherwise constitute an offense [against the person] is excusable and not criminal when it is the result of accident in any lawful act by lawful means without knowingly causing or attempting to cause physical injury and without acting with criminal negligence").
            In several other States' statutes, transferred intent self-defense is unavailable if the defendant, while justified or excused in using force against an assailant, nonetheless "recklessly or negligently injures" (or creates a risk of injury to) an innocent third person.  See Ark. Code Ann. § 5-2-614(b); Del. Code Ann. tit. 11, § 470(b); Haw. Rev. Stat. § 703-310(2); Neb. Rev. Stat. § 28-1414(3); N.J. Stat. Ann. § 2C:3-9(c); N.D. Cent. Code § 12.1-05-01.[5]  See also Wis. Stat. § 939.48(3) (self-defense privilege extends to unintended infliction of harm on third person except where unintended infliction of harm amounts to reckless homicide or homicide by negligent handling of dangerous weapon).  
            Last, under five States' statutes, transferred intent self-defense is unavailable in a prosecution for the reckless injury (or, in some States, reckless killing) of an innocent third person if a defendant, in the lawful exercise of self-defense against another, recklessly injures (or recklessly kills) that innocent third person.  See Ariz. Rev. Stat. Ann. § 13-401(A); Ky. Rev. Stat. Ann. § 503.120(2); Me. Rev. Stat. tit. 17-A, § 101(3); Tenn. Code Ann. § 39-11-604; Tex. Penal Code Ann. § 9.05.
            Here, the Commonwealth states that it "makes sense" to adopt a limited form of transferred intent self-defense.  It concedes that a defendant is entitled to be acquitted of murder in the first degree for the killing of an unintended victim if he or she "acted in the proper and prudent exercise of self-defense and without negligence."  It is the Commonwealth's view, however, that if the jury find that a defendant "failed to exercise ordinary care and caution in responding to the threat and killed an innocent bystander," he or she is guilty of the lesser included offense of murder in the second degree.  
            The defendant urges this court "to adopt Pennsylvania's approach and implement a robust [transferred intent self-defense] doctrine."  He then argues, in the alternative, that the court should follow the "undoubtedly" "common-sense" majority view whereby "[t]he unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense," but may be manslaughter.  Jackson, 390 Mich. at 624.[6]  
            We agree with the defendant's alternative argument for three reasons.  First, this court has previously recognized, in the context of excessive force, that "self-defense is not an all or nothing proposition."  Commonwealth v. Johnson, 412 Mass. 368, 372-373 (1992).  A jury may consider "the legal consequence of using manifestly disproportionate violence in the supposed exercise of the right of self-defence" (citation omitted).  Id. at 372.  Consistent with this approach, an individual should not be shielded from the consequences of wanton or reckless conduct resulting in the death of an innocent bystander.  Second, adopting a limited form of transferred intent self-defense strikes a balance between an individual's right to use deadly force to repel an attack and the societal interest in protecting innocent bystanders recklessly injured by a self-defender.  See Barber v. State, 386 P.3d 1254, 1262 (Alaska Ct. App. 2016) ("no 'transferred' privilege to attack and injure innocent third parties"); Fowlin, 551 Pa. at 427 (Castille, J., concurring and dissenting) ("One engaged in self-defense should bear some responsibility towards uninvolved bystanders . . .").  See generally Barlow, Self-Defense and Reckless Crimes Against Third Parties:  Has New York Forgotten Innocent Bystanders?, 22 Colum. J.L. & Soc. Probs. 417, 420, 440-441 (1989) ("An assailant assumes the risk of being killed by her victim.  A bystander, however, does nothing to trigger the victim's use of deadly force and cannot be held to have assumed the same risk as the assailant simply by being in the wrong place at the wrong time").  
            Third, as applied to this case, the agreed-upon facts (firing two gunshots at Sanchez in self-defense with Tran in close proximity) fit within the scope of involuntary manslaughter, a lesser included offense to murder in the first degree.[7]  "Involuntary manslaughter is an unlawful homicide unintentionally caused . . . by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct" (quotation and citation omitted).  Commonwealth v. Barlow-Tucker, 493 Mass. 197, 204 (2024).  The focus is on "the conduct that caused the result . . . not the resultant harm."  Commonwealth v. Hardy, 482 Mass. 416, 424 (2019).  See Commonwealth v. Life Care Ctrs. of Am., Inc., 456 Mass. 826, 832 (2010) ("reckless conduct does not require that the actor intend the specific result of his or her conduct, but only that he or she intended to do the reckless act").  
            Finally, the court declines to accept the Commonwealth's position that the standard of care is the exercise of "ordinary care and caution in responding to the threat."  It is true that, in many jurisdictions, self-defense justification for the killing of an unintended victim requires the defendant exercise "usual and ordinary caution," or act without criminal negligence.  Betts, 316 Kan. at 202-204.  Nonetheless, in the Commonwealth, it is well established that "at common law conduct does not become criminal until it passes the borders of negligence and gross negligence and enters into the domain of wanton or reckless conduct."  Commonwealth v. Welansky, 316 Mass. 383, 400 (1944).  See Commonwealth v. Carrillo, 483 Mass. 269, 275 (2019) ("phrase -- 'a high degree of likelihood that substantial harm will result to another' -- separates wanton or reckless conduct from the unreasonable risk of harm that constitutes negligence or gross negligence").  
            Conclusion.  The answer to the first reported question is "Yes."  On appropriate facts, a defendant may assert a claim of transferred intent self-defense to justify the death of an unintended victim, such as an innocent bystander, killed during the lawful exercise of self-defense against an assailant.  The answer to the second reported question is that transferred intent self-defense presents a partial defense to murder.  A murder defendant may be held criminally liable for the lesser included offense of involuntary manslaughter if the Commonwealth proves beyond a reasonable doubt that a defendant's exercise of self-defense was wanton or reckless so as to create a high degree of likelihood that substantial harm would result to an unintended victim.  The matter is remanded to the Superior Court for further proceedings consistent with this opinion.
So ordered.  
Appendix.
Model Jury Instruction -- Transferred Intent Self-Defense.
            [Note to Judge:  The following instruction should be provided to the jury where:  (1) the facts present an issue of transferred intent liability for the death of an unintended victim such as an innocent bystander; (2) the evidence, viewed in the light most favorable to the defendant, raises an issue of the use of deadly force in self-defense [or defense of another] to defend against an assailant; and (3) the evidence raises an issue of wanton or reckless conduct in the exercise of lawful self-defense.  This instruction is to be given following the self-defense instruction.] 
            A person is not guilty if he acted in proper self-defense.  When I use the term "proper self-defense," I am distinguishing self-defense that is both justified and proportional and therefore a complete defense to the crime, from self-defense that is justified, but where the defendant's conduct is wanton or reckless resulting in the death of an unintended victim.  It is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in proper self-defense.  The defendant does not have the burden to prove that he acted in proper self-defense.  If the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in proper self-defense, then you must find the defendant not guilty.
            [Where there is evidence of wanton or reckless conduct in self-defense]  In this case, even if you conclude that the defendant acted in self-defense, you must consider whether the defendant's conduct in the exercise of self-defense was wanton or reckless.  To prove the defendant guilty of the lesser included offense of involuntary manslaughter based on the defendant's conduct in the exercise of self-defense, the Commonwealth must prove beyond a reasonable doubt that the defendant's conduct was wanton or reckless. 
            Wanton or reckless conduct is intentional conduct that creates a high degree of likelihood that substantial harm will result to another person.  It is conduct involving a grave risk of harm to another that a person undertakes with indifference or disregard of the consequences.  Whether conduct is wanton or reckless depends on what the defendant knew or how a reasonable person would have acted knowing what the defendant knew.  If the defendant realized the grave risk created by his conduct, his subsequent act amounts to wanton or reckless conduct whether a reasonable person would have realized the risk of grave danger or not.  Even if the defendant himself did not realize the grave risk of harm to another, the act would constitute wanton or reckless conduct if a reasonable person, knowing what the defendant knew, would have realized the act posed a risk of grave danger to another.
            It is not enough for the Commonwealth to prove the defendant acted negligently, that is, in a manner that a reasonably careful person would not have acted.  The Commonwealth must prove that the defendant's actions went beyond negligence and amounted to wanton or reckless conduct as I have defined that term.  
            In determining whether the Commonwealth has proved wanton or reckless conduct beyond a reasonable doubt, you may consider all the circumstances confronted by the defendant forced to defend himself in a potentially life-threatening moment.  You should assess the defendant's conduct realistically and make allowances for weaknesses in human judgment in extremely stressful situations. 
            [Where there is evidence of mental impairment or intoxication]  In deciding whether the defendant knew or should have known his conduct created a high degree of likelihood that substantial harm would result to another, you may consider any credible evidence that the defendant suffered from a mental impairment or was affected by his consumption of alcohol or drugs.  A defendant may have the requisite knowledge even if he suffered from a mental impairment or consumed alcohol or drugs, but you may consider such evidence in determining whether the Commonwealth has proved this element.
            I have already told you that to prove the defendant guilty of murder, the Commonwealth is required to prove beyond a reasonable doubt that the defendant did not act in the proper exercise of self-defense.  If the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in proper self-defense you shall find the defendant not guilty.  If, however, the Commonwealth proves that the defendant's exercise of self-defense was wanton or reckless, resulting in the death of an unintended victim, you shall find the defendant guilty of the lesser included offense of involuntary manslaughter.
 
footnotes

 
            [1] The judge also reported a third question:  "If it is a complete or partial defense, what instructions should the trial judge give to the jury regarding the nature of the defense and its limits?"  We answer that question by providing an Appendix containing a provisional model jury instruction.  The jury should be so instructed only where the facts present an issue of transferred intent liability for the death of an unintended victim and the evidence, viewed in the light most favorable to the defendant, raises an issue of deadly force in self-defense against a third party.  We leave the final revisions to the Standing Committee on the Model Jury Instructions on Homicide.  Further, we emphasize that this opinion, limited to the reported questions, does not diminish a defendant's existing right to raise self-defense or the Commonwealth's burden to disprove self-defense.  
            [2] Where there is evidence that the defendant was the initial aggressor, the Commonwealth may also prove the defendant did not act in lawful self-defense by showing that he "was the first to use or threaten deadly force" and neither "withdr[e]w in good faith from the conflict" nor clearly communicated "his intention to withdraw and end the confrontation" (citation omitted).  Commonwealth v. Chambers, 465 Mass. 520, 528 & n.8 (2013).
            [3] A conviction of murder in the first degree based on a theory of extreme atrocity or cruelty or of felony-murder may be proven by any one of the three prongs of malice:  (1) the defendant intended to kill the victim; (2) the defendant intended to cause grievous bodily harm to the victim; or (3) the defendant intended to do an act that, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood of death.  Model Jury Instructions on Homicide 50, 59-60.  See Commonwealth v. Martin, 484 Mass. 634, 644 (2020), cert. denied, 141 S. Ct. 1519 (2021); Commonwealth v. Riley, 467 Mass. 799, 821-822 (2014). 
            [4] Professor Wayne R. LaFave, a leading commentator on criminal law, explains:  "If A in proper self-defense aims at his adversary B but misses B and unintentionally strikes innocent bystander C, he is not liable for C's injury or death.  But the result is otherwise if under all the circumstances (including the need to defend himself) A was reckless with regard to C.  In such a case he would be liable for battery if he merely injures, involuntary manslaughter if he kills, C" (footnote omitted).  2 W.R. LaFave, Substantive Criminal Law § 10.4(g) (3d ed. 2018). 
            [5] These provisions track Model Penal Code § 3.09(3) (Official Draft and Revised Comments 1985), which provides:  "When the actor is justified under [§§] 3.03 to 3.08 [(concerning self-protection and protection of others)] in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those Sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons."
            [6] The Commonwealth and the defendant suggest that the court should decide whether the defendant would be entitled to a voluntary manslaughter instruction based on reasonable provocation.  We decline to expand the reported questions.
            [7] The Commonwealth argues that the lesser included offense for the killing of an unintended victim during the lawful exercise of self-defense against another is murder in the second degree.  It points out that, "[g]enerally, intentionally discharging a firearm at a person presents a plain and strong likelihood of death," an act of third prong malice.  See Commonwealth v. Childs, 445 Mass. 529, 533 (2005).  While acknowledging the fine line distinguishing murder in the second degree on a theory of third prong malice from wanton or reckless involuntary manslaughter, see Commonwealth v. Sires, 413 Mass. 292, 303 n.14 (1992), we disagree with the Commonwealth's position.  The court adopts, for purposes of transferred intent self-defense, the view of our sister States imposing criminal liability for reckless conduct in otherwise proper self-defense resulting in the killing of an unintended victim.  This amounts to involuntary manslaughter, not murder based on malice.  See Commonwealth v. Barlow-Tucker, 493 Mass. 197, 204 (2024).